357 P.2d 133

**Hyman MYERSON, Appellant,**

**v.**

**Abe MYERSON, Appellee.**

**No. 6549.**

Supreme Court of Arizona.

Nov. 23, 1960.

Conner & Jones and James Elliott Dunseath, Tucson, for appellant.

Boyle, Bilby, Thompson & Shoenhair, Tucson, for appellee.

WILLIAM E. KIMBLE, Superior Court Judge.

This is an appeal by Hyman Myerson from a judgment directing that a certain Series Nine Spirituous Liquor License held by Hyman Myerson and Abe Myerson as co-tenants be sold and not equitably partitioned. Appellant assigns as error only that the evidence was not sufficient to support the judgment of the trial court and was contrary to law.

For a number of years prior to 1938, plaintiff and defendant, who are brothers, operated the White House Department Store in Tucson, as a partnership. In July 1938, they purchased a grocery store located at 702 N. Stone Avenue in Tucson, from Ruben Thornton. This store was known as Consumers Market and included a drug department from which packaged liquors were sold under a Series Nine Liquor License issued by the State of Arizona.

There is some conflict as to whether this license was included in the original purchase, or whether it was subsequently obtained by the partners. However, both brothers made the original application for transfer and their interest was shown to be equal. It does appear that the purchase of the license was made with partnership funds, and that the business was operated on a partnership basis, with the profits from the sale of liquor equally divided until June, 1940, when the partnership was increased to include Joe Myerson, another brother.

No change in the ownership of the liquor license was made at that time, or at any subsequent time. It does appear, however, that the brothers treated the license as a partnership asset, for the profits from the sale of liquor were shared by the three brothers, the renewal fee for the license was paid from partnership earnings, and it was used by the partnership without charge.

In July, 1947, the three partners formed a corporation known as Consumers Market, a corporation. No change of ownership of the license was made, but the corporation paid the annual renewal fees and used the license without charge. Commencing in 1953, the renewal applications reflected interests in the license in the same percentages as the stock interest in the cor-

poration: Hyman Myerson, 40%, Abe My-
erson, 40%, Joe Myerson, 15% and E. C.
Marquis, 5%, and showed the business
name of the applicant to be Consumers,
Incorporated. The stock of Abe and Joe
Myerson was transferred to Hyman on
January 15, 1955 and since that date Abe
and Joe have had no interest in the corpo-
ration.

On September 28, 1956, defendant, as
president of Consumers Market, a corpo-
ration, made application to the State to
transfer the liquor license from the market
at 702 N. Stone Avenue to a market at
Wilmot Plaza in Tucson. Plaintiff pro-
tested at the hearing on the proposed trans-
fer, before the Pima County Board of
Supervisors, and on October 24, 1956, filed
a complaint in the Pima County Superior
Court, alleging that he and the defendant
owned the license, and that the defendant
was attempting to change the location of
the license against the will of the plaintiff
and without his consent. Upon this action
judgment was rendered as indicated above.

█ In his briefs appellant cites many
examples to support his contention that the
license was treated and considered by the
parties as a partnership asset until 1947,
and that thereafter he held it in trust for
the corporation. With this contention we
cannot agree regardless of the intention of
the parties or the use to which the license
was put.

Section 4–202, subd. A, Arizona Revised
Statutes, provides:

"Every spirituous liquor licensee,
other than a club licensee, shall be a cit-
izen of the United States and a bona
fide resident of the state."

Section 72–106, Arizona Code Annotated,
1939, provided:

"(a) Every spirituous liquor licensee
shall be a qualified elector. If a part-
nership, all members shall be qualified
electors."

It is clear that under neither of these
sections can a corporation hold title to a
liquor license. The reason is obvious; be-
cause of the nature of the license, the con-
duct of the business transacted thereunder
becomes a matter for public concern, and
the character of the persons holding and
using such a license becomes a basis for
the granting or withholding of such a li-
cense. There must be not only the personal
integrity of character, which a corporation,
by its very nature lacks, but there must also,
in the public interest, be the personal re-
sponsibility which a corporation likewise
lacks. It is therefore contrary, both to the
law and to public policy, for a corporation
to hold a liquor license.

██ Such being the law and the policy
of this state, that which cannot be done
directly cannot be done indirectly, and for
this reason we reject appellant's theory that

the license was held in trust, first for the partnership and later for the corporation.

"An intended trust or a provision in the terms of a trust is invalid if the enforcement of the intended trust or provision would be against public policy, even though its performance does not involve the commission of a criminal or tortious act by the trustee." Restatement of the Law of Trusts, Sec. 62.

See also Bogert, Trusts and Trustees, Volume 1A, Section 211.

Appellant argues that because each of the stockholders of Consumers Market, Inc., also held liquor licenses in his own name, he thereby submitted himself and his qualification to the scrutiny of the Superintendent and had thereby been approved as a person qualified to hold a liquor license. This argument does not answer the problem, however, for the stockholders of the corporation may change, which would be a matter both outside the control of, and ordinarily outside the knowledge of the Superintendent.

We approve this court's recent statement in Clark v. Tinnin, 81 Ariz. 259, 304 P.2d 947, 949:

"The general rule in the United States prohibits the holding or acquisition of a liquor license by one person in the interest of others as being contrary to public policy. (Citation of Author-ity) Our statutes reflect this general policy in that they provide that the applicant must have the statutory qualifications and be approved by the Superintendent of the Department of Liquor Licenses and Control. Any agreement which provides that one party will secure a license and hold it for the benefit of an undisclosed party who has not submitted himself and his qualifications to the scrutiny of the Superintendent contravenes the public policy of this state and is therefore invalid and unenforceable."

We must now deal with one other facet of this problem: If the corporation does not own the license, who does own it? Regulation 11 of the Rules and Regulations of the Arizona Department of Liquor Licenses and Control provides:

"No licensee shall make any change in the financial set-up of his business which in any way interests any other person directly or indirectly in such business without first having filed with the Superintendent an application to transfer any such interest, nor shall any licensee or partner in a business licensed under the act purchase the interest held by any other person or partner in the business without first filing an application to transfer such interest."

The record is clear that no change of ownership was ever made in conformity with this

regulation. The license was originally issued in the name of Hyman Myerson and was owned one-half by Hyman and one-half by Abe Myerson.

As we noted earlier, in June, 1940, the business partnership consisting of Hyman and Abe Myerson was enlarged to include a third brother, Joe. The interest of Hyman and Abe Myerson in the license was not changed by this addition, inasmuch as no effort was made to comply with the regulation above quoted. Hyman owned 50% and Abe owned 50%, and no change in this percentage was ever made, although there was an agreement to share in the profits from the partnership business which included the use of the license. Hence at the time of the dissolution of this partnership, the plaintiff and defendant each still owned a 50% interest in the license.

This brought the ownership squarely within the terms of A.R.S. § 12–1222:

"Part owners of personal property may be compelled to make partition between them by an action for partition commenced in the court having jurisdiction of the value of such property in the same manner as other civil actions are commenced."

The trial court was correct in its conclusion that the license could not be equitably partitioned, but must be partitioned and sold in the manner contemplated by the foregoing statute.

The judgment is therefore affirmed.

STRUCKMEYER, C. J., PHELPS and BERNSTEIN, JJ., and FRED J. HYDER, Superior Court Judge.

UDALL, Justice, having disqualified himself, the Honorable WILLIAM E. KIMBLE, Judge of the Superior Court of Cochise County, Arizona, was called to sit in his stead and participate in the determination of this appeal.

JOHNSON, Justice, having disqualified himself, the Honorable FRED J. HYDER, Judge of the Superior Court of Maricopa County, Arizona, was called to sit in his stead and participate in the determination of this appeal.