BROWN DISTRIBUTING COMPANY, INC., an Oklahoma Corporation, Beer Distributors, Inc. (formerly Stag Sales Company, Inc.), Pope Distributing Co., Inc., Ford Distributing Company, T. B. Hendrick & Assoc., Inc., Bryson, Inc., Appellees,

v.

OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, Appellant.

No. 51782.

Supreme Court of Oklahoma.

July 3, 1979.

Blackstock, Joyce, Pollard, Blackstock & Montgomery by William C. Kellough, Tulsa, for appellee, Brown Distributing Co., Inc.

Rosenstein, Fist & Ringold by Donald R. Bradford, Tulsa, for appellee, Stag Sales Co.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick by D. Kent Meyers, Oklahoma City, for appellees, Ford Distributing Co. and T. B. Hendricks Associates, Inc.

Durall, Meadows, Sheehan & Walters by William C. Meadows, Oklahoma City, by appellee, Bryson, Inc.

Wallace, Bickford & Pasley by Harry L. Bickford, Ardmore, for appellee, Midwest Beverage, Inc.

Larry Derryberry, Atty. Gen. of Oklahoma by Kenneth L. Delashaw, Jr., Asst. Atty. Gen. and Danny K. Shadid, Legal Intern, Oklahoma City, for appellant, Alcoholic Beverage Control Bd.

HODGES, Justice.

█ On April 7, 1959, at a special election, a referendum petition was adopted to the Oklahoma Constitution which provided in part that *no* corporation shall be issued an Oklahoma Class B wholesale or package store liquor license.[1] Contra to this constitutional mandate, the legislature subsequently enacted 37 O.S.1971 § 526[2] which provided in part that all corporations who were actively engaged in wholesaling nonintoxicating malt beverages on April 7, 1959, shall be qualified for a Class B wholesaler's license. We hold this part of the statute is repugnant to the Constitution and should be stricken.

Prior to the repeal of prohibition in Oklahoma in 1959, the appellees held licenses to distribute non-intoxicating malt beverages (3.2% beer). In 1959, appellees were issued Class B wholesalers' licenses pursuant to 37 O.S.1971 § 526 of the Oklahoma Alcoholic Beverage Control Act. The appellees have continued to hold Class B wholesalers' licenses from year to year without interruption, without any violation under the law and regulations pertaining to the licenses. No violation of any law or ordinance has been charged by the Oklahoma Alcoholic Beverage Control Board (ABC Board), appellant, and no issue of the personal fitness or integrity of any licensee is presented. In June of 1976, in response to an informal

---

1. Title 37 O.S.1971 § 526 provides in pertinent part:

"No wholesaler's, Class B wholesaler's, or package store license shall be issued to a corporation, business trust or secret partnership, nor to individuals, partnerships, or limited partnerships unless such individual or each and every partner, whether a general or limited partner, has been a continuous resident and citizen of this State for at least ten (10) years next preceding the date of application for such license. Any such license shall terminate as a matter of law at any time the above conditions do not prevail. Inasmuch as it is not the legislative intent to abrogate, impair or interfere with the continuation of existing contracts and business relationships nor to prevent entities which were actively engaged in wholesaling nonintoxicating malt beverages on April 7, 1959, from becoming a Class B wholesaler of beer hereunder, this Section shall not be deemed to preclude the issuance of a Class B wholesaler's license to any Oklahoma corporation, business trust or partnership which on April 7, 1959, was engaged by franchise or contract in wholesaling nonintoxicating malt beverages as a licensee under Title 37, Oklahoma Statutes 1951, in Oklahoma. Each such corporation, business trust, individual or partnership shall be qualified for a Class B whole-

saler's license if qualified under the other provisions of this Act."

2. The Okla.Const. art. 27 § 10 provides:
"No retail or wholesale distributor's license shall be issued to:
(a) A corporation, business trust or secret partnership.
(b) A person or partnership unless such person or all of the copartners including limited partners shall have been residents of the State of Oklahoma for at least ten (10) years immediately preceding the date of application for such license.
(c) A person or a general or limited partnership containing a partner who has been convicted of a violation of a prohibitory law relating to the sale, manufacture, or the transportation of alcoholic beverages which constituted a felony or misdemeanor.
(d) A person or a general or limited partnership containing a partner who has been convicted of a felony or who has held a Federal Liquor Stamp while a resident of the State of Oklahoma prior to the adoption of this act, except those persons who have held said stamp on a military reservation or installation. Added State Question No. 386, Referendum Petition No. 121, Adopted at election April 7, 1959."

inquiry, the Attorney General wrote a letter to the director of the ABC Board stating that, in his opinion, the holding of a Class B wholesaler's license by the "grandfather" corporations violated the Constitution. A formal opinion was sought from the Attorney General, but a formal opinion was not issued. The director of the ABC Board informed the appellees in August of 1976, that their Class B wholesalers' licenses would be revoked November 1, 1976. The delay in revocation was provided to permit the appellees to convert their businesses from corporate status to partnerships or individual proprietorships so that they could continue to hold a Class B wholesaler's license.

The appellees filed protests with the ABC Board and a hearing was held in September of 1976. The Board concluded that no corporation in Oklahoma could lawfully hold a Class B wholesaler's license. An appeal was filed with the District Court of Oklahoma County pursuant to the Administrative Procedures Act, 75 O.S.1971 § 318. The Court reversed the order of the Board. It determined: the appellees had a vested right to engage in the sale of strong beer prior to the adoption of art. 27 of the Oklahoma Constitution; art. 27 was prospective in operation, and the Constitution could not deprive the appellees of an already existing property right.

### I

The Twenty-first Amendment of the United States Constitution has consistently been held to vest the states with virtually unlimited power in regulating liquor traffic within their respective borders.[3] The Oklahoma Alcoholic Beverage Control Act, 37 O.S.1971 § 532, provides that any license issued under the Act is a purely personal privilege. There is no right to a liquor license or to traffic in alcoholic beverages. No one has an absolute or inherent right to a license to sell intoxicating liquor and its issuance is a matter, not of right but, of legislative grace and may be extended, limited, or denied without violating any constitutional right. The state maintains the inherent power to abolish all liquor traffic within its boundaries if it so chooses, anything less than total prohibition is the result of legislative prerogative. The legislature, subject to constitutional restrictions, may lawfully grant the right to engage in the traffic of liquor to a certain class or classes of persons and withhold it from others, and no one may complain because liquor legislation has denied him the privilege of engaging in the liquor traffic.[4]

The effect of the Twenty-first Amendment on state regulatory powers was explained by the United States Supreme Court in *California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)*. The Court held that, while the states are vested with general police power, and require no specific grant of authority in the federal constitution to legislate with respect to matters traditionally within the scope of the police power, the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare and morals. In *State Board v. Youngs Market Company, 299 U.S. 59, 64, 57 S.Ct. 77, 81 L.Ed. 38 (1936)* the Court held that a classification recognized by the Twenty-first Amendment cannot be deemed forbidden by the Fourteenth Amendment. The Court reaffirmed in *Hostetter v. Idlewild Liquor Corporation, 377 U.S. 324, 330, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964)* that, because of the Twenty-first Amendment, a state is totally unconfined by traditional commerce clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.

The statute is clearly a "grandfather" statute which attempts to preserve the position the appellees enjoyed prior to the en-

---

**3.** The Twenty-first Amendment provides in pertinent part:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

**4.** *Marcus v. State, 411 P.2d 539 (Okl.1966).*

actment of the constitutional provisions repealing prohibition. We find that the Constitution is not prospective and that there was no language in it to that effect and that, because the license is clearly delineated as a privilege, there was no vested property right enjoyed by appellees.

## II

■ The rationale for the prohibition against a corporation holding a Class B wholesaler's license is to permit enforcement and regulation of the liquor industry without the necessity for penetrating the corporate shield. The State of Arizona operated under similar statutory provisions in the early 1960s, and the Supreme Court of that state, in referring to statutes which required a liquor licensee to be a United States citizen, an Arizona citizen, and a qualified elector, said:

> "It is clear that under neither of these sections can a corporation hold title to a liquor license. The reason is obvious; because of the nature of the license, the conduct of the business transacted thereunder becomes a matter for public concern, and the character of the persons holding and using such a license becomes a basis for the granting or withholding of such a license. There must be not only the personal integrity of character, which a corporation, by its very nature lacks, but there must also, in the public interest, be the personal responsibility which a corporation likewise lacks. It it therefore contrary, both to the law and to public policy, for a corporation to hold a liquor license." *Myerson v. Myerson, 88 Ariz. 385, 357 P.2d 133 (1960).*

The provision which refuses to issue liquor licenses to corporations is an attempt to adequately control liquor licenses. As the law in this state now exists, there are no means to scrutinize the corporation's moral character or the character of the individual stockholders. There is no effective way to assure the maintenance of the distinct separation of interests. There is no effective way to examine all stockholders for prior felony convictions or violations of federal or state liquor laws. The issuance of a liquor license is a privilege granted an applicant as a matter of legislative grace. The state retains broad power to control liquor traffic within its borders.

The Constitution provides that no retail or wholesale distributor's license *shall* be issued to a corporation, while the statute attempts to provide for the continuation of existing contracts and business relationships, and states that entities which were actively engaged in wholesaling non-intoxicating malt beverages prior to the repeal of prohibition are not to be precluded from the issuance of a Class B wholesaler's license. Art. 27, § 3 of the Oklahoma Constitution provides that the legislature shall enact laws providing for the strict regulation and licensing and sale of alcoholic beverages. The constitutional restrictions placed on the legislature by the Constitution are not ambiguous. The legislature must enact laws consistent with the constitutional provisions. Art. 27, § 10, expressly prohibits the issuance of a wholesale distributor's license to a corporation. The requirement that those with interest in one sector of the liquor industry be kept separate from those with interest in other sectors to prevent one group from unduly controlling or influencing the other is a proper exercise of the police power of the state. The statute is clearly repugnant to the provisions of the Constitution. The denial of a Class B wholesaler's license to a corporation is totally justified within the law.

The effective date for compliance with this opinion is November 1, 1979.

REVERSED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, SIMMS, and HARGRAVE, JJ., concur.

OPALA, J., concurs in result.