2010 OK CIV APP 56

**Sister Patricia Ann MILLER, Representative of the Carmelite Sisters of St. Teresa, Plaintiff/Appellee,**

v.

**Kenneth Richard GONZALES, Defendant/Appellant,**

and

**The State of Oklahoma, Intervenor/Appellee.**

**No. 106,771.**

Court of Civil Appeals of Oklahoma, Division No. 2.

March 8, 2010.

Certiorari Denied May 17, 2010.

Michael S. "Mickey" Homsey, Terry R. McMillan, Homsey & Associates, Oklahoma City, OK, for Defendant/Appellant.

Kevin Calvey, Kevin J. Calvey, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Scott D. Boughton, Assistant Attorney General, Oklahoma Attorney General, Litigation Section, Oklahoma City, OK, for Intervenor/Appellee.

DEBORAH B. BARNES, Judge.

¶1 This accelerated [1] appeal is brought to challenge the constitutionality of 11 O.S. Supp.2008 § 22–115.1,[2] a statute enacted in 2008 that restricts the location of dog kennels in certain locations near schools or day care facilities. Appellant Kenneth Richard Gonzales (Gonzales) is the owner of an unlicensed dog kennel that is located within 2,500 feet of Villa Teresa Moore School, a school and day care facility operated by the Carmelite Sisters of St. Teresa, who are represented in this lawsuit by appellee Sister Patricia Ann Miller, as Representative of the Carmelite Sisters of St. Teresa (Representative).[3]

¶2 On June 18, 2008, about two weeks after § 22–115.1 became effective, Represen-

1. Rule 1.36, Okla. Sup.Ct. Rules, 12 O.S. Supp. 2004, ch. 15, app. 1.

2. Title 11 O.S. Supp.2008 § 22–115.1, provides as follows:

A. Upon the effective date of this act [June 4, 2008], no dog kennel shall be located within two thousand five hundred (2,500) feet of a public or private school or licensed day care facility in a municipality having a population of more than three hundred thousand (300,000). Provided, this prohibition shall not apply to a dog kennel that was lawfully in operation and in full compliance with all licensing, permitting and zoning requirements applicable to said kennel prior to the effective date of this act.

B. Upon the effective date of this act, no public officer or employee shall issue any type of license, permit, approval or consent for a dog kennel to be located within two thousand five hundred (2,500) feet of a public or private school or licensed day care facility in a municipality having a population of more than three hundred thousand (300,000).

C. Applications for a dog kennel license or for any governmental permit, approval or consent needed to authorize the lawful operation of a dog kennel that are pending on the effective date of this act shall be subject to the prohibitions set forth in subsections A and B of this section.

D. The provisions of subsections A and B of this section may be enforced by any public officer within whose jurisdiction a noncompliant dog kennel is located or by any other person aggrieved in any way by noncompliance with said provisions. Enforcement action may include a civil suit for an injunction filed in the district court in the county where a noncompliant dog kennel is located.

E. Any municipality is hereby authorized to enact an ordinance consistent with the provisions of this section and to enforce said ordinance by prosecution of violations in the municipal court, as provided by law.

F. For the purposes of this section, the term "dog kennel" means any place other than a federal, state or municipal facility, veterinary hospital or medical research institute, where more than four dogs beyond the age of six (6) months are kept, harbored, boarded, sheltered or bred.

3. The instant appeal (Cleveland County Dist. Ct. Case No. CJ–2008–1236–L) is one of four appeals before this Court-two from Cleveland County and two from Oklahoma County. Appeal No. 106,-196, also from Cleveland County (Dist. Ct. Case No. CJ–2008–1236–L), is an appeal from the trial court's grant of a temporary injunction under 11 O.S. Supp.2008 § 22–115.1(D). This Court's Opinion, filed on February 23, 2010, disposed of that appeal. Appeal No. 105,313 (Oklahoma County Dist. Ct. Case No. CJ–2006–9144) is an appeal brought by Representative, Jim Muse, Janet Muse, Dale Bliss, Cynthia Bliss, and Glen Orr from the trial court's order granting Gonzales certain zoning variances and a special zoning exception that had previously been denied by the Oklahoma City Board of Adjustment. The fourth case, Appeal No. 106,788 (Oklahoma County Dist. Ct. Case No. CJ–2008–5282) is brought by the State of Oklahoma and the City of Oklahoma City, alleging the trial court erred in finding the statute "unconstitutional as applied" to Gonzales.

tative [4] filed a petition, requesting temporary and permanent injunctive relief to prohibit Gonzales from operating his kennel and from having more than four dogs on his property in contravention of § 22–115.1. In response, Gonzales filed a "Response and Objection to Plaintiff's Application for Temporary Injunction, and Defendant's Motion for Declaratory Judgment of Unconstitutionality of Title 11, Section 22–115.1."

¶3 The trial court allowed the State of Oklahoma (State) to intervene [5] to respond to Gonzales's constitutional challenge. Gonzales, Representative and State each filed a motion for summary judgment. On November 12, 2008, the trial court entered its Order denying Gonzales's motion for summary judgment and granting the motions for summary judgment filed by Representative and State.

¶4 Gonzales filed a "Motion for New Trial and to Vacate Judgment" on November 21, 2008. By Order filed on January 23, 2009, the trial court denied Gonzales's "Motion for New Trial and to Vacate Judgment." From the November 12, 2008, Order and from the Order denying a new trial or vacation of the judgment, Gonzales appeals. After review-

ing the record and applicable law, we find the trial court did not err and thus, we affirm.

## MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS

¶5 1. Gonzales operates a dog [6] kennel within the city limits of Oklahoma City, Oklahoma, within Cleveland County, Oklahoma.[7]

2. Oklahoma City is a municipality with a population of more than three hundred thousand (300,000).[8]

3. Gonzales has 25 dogs in his dog kennel.[9]

4. Gonzales's dog kennel is located within 2,500 feet of Villa Teresa Moore School, a school and day care operated by Representative.[10]

5. Gonzales has no license to operate the kennel [11] and has been operating his kennel without a license since November 2005.[12]

6. Gonzales had initiated the license application process, but had not received a license prior to the enactment of 11 O.S. Supp. 2008 § 22–115.1.[13]

---

4. The statute expressly gave Representative, as "any other person aggrieved in any way by noncompliance," the right to file this action in Cleveland County District Court and request injunctive relief.

5. Title 12 O.S. Supp.2003 § 2024(D)(1) provides that the trial court shall permit State to intervene when "the constitutionality of any statute of this state affecting the public interest is drawn in question...."

6. Gonzales raises and shows internationally-recognized, champion registered American pit bull terriers (American Staffordshire terriers). Record (R.), at Tab 39, at pp. 68, 89, 90. Although there is considerable conflicting information in the record regarding the nature of the breed in general and Gonzales's dogs in particular, including unchallenged assertions that none of Gonzales's dogs has ever attacked or bitten any adult or child, none of these facts is material to our consideration of the statute at issue.

7. R., at Tab 24, p. 3.

8. It is undisputed that within Oklahoma, the municipalities with populations in excess of 300,000 are Tulsa and Oklahoma City.

9. Transcript (Tr.) of Gonzales's deposition, R., at Tab 12, attached as "Defendant's Exhibit 11," p. 55.

10. R., at Tab 3, p. 3.

11. Tr., at R., at Tab 12, attached as "Defendant's Exhibit 13," p. 77.

12. R., at Tab 40, attached transcript, pp. 43–44. The trial court stated: "So I guess what you're [counsel for Gonzales] saying is that without regard to when the argument started and all that, [Gonzales] had dogs—more than four dogs and had some kennels out there without a license before all this [litigation] started?" Counsel for Gonzales replied, "Correct.... The end of '05, like November of '05 is when we moved in." The trial court stated: "I guess another way to say that is he made these improvements knowing he didn't have a license." Counsel for Gonzales replied, "That is correct. And we got variances from the Board of Adjustmen[t] for doing some improvements that were not permitted at the time."

13. R., at Tab 12, Tr., p. 77; Tab 24, p. 5.

## STANDARD OF REVIEW

¶ 6 Our standard of review for this appeal is as follows:

Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process. Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense. Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.

Summary relief issues stand before us for *de novo* review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by *nisi prius* courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

*Reeds v. Walker*, 2006 OK 43, ¶¶ 8–9, 157 P.3d 100, 106–107. (Footnotes omitted.) *See also* Rule 13, Rules for District Courts of Oklahoma, 12 O.S. Supp.2002, ch. 2, app.

¶ 7 An appellate court "will not disturb an order which grants or refuses an injunction unless there is a showing the trial court abused its discretion or that the judgment is clearly against the weight of the evidence or contrary to law." *House of Sight & Sound, Inc. v. Faulkner*, 1995 OK CIV APP 112, ¶ 5, 912 P.2d 357, 360, citing *Sharp v. 251st Street Landfill, Inc.*, 1991 OK 41, 810 P.2d 1270. And, this Court's review of a judgment denying declaratory relief is reviewable in the same manner as other judgments. 12 O.S. 2001 § 1654. The trial court's judgment raised an issue of law and is thus reviewable "under a *de novo* standard." *Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 11, 160 P.3d 967, 972.

## ANALYSIS

¶ 8 In the trial court's November 12, 2008, Order, the trial court found, in pertinent part, after hearing oral argument, considering testimony, and receiving additional authorities and suggested findings of facts and conclusions of law, as well as the parties' stipulations and briefs:

1. This Court has jurisdiction and venue pursuant to 11 O.S. 22–115.1.

2. 11 O.S. 22–115.1 is not unconstitutional.

3. 11 O.S. 22–115.1 specifically grants persons operating a school within 2500 feet of a dog kennel in Oklahoma City or Tulsa standing to seek a permanent injunction against a kennel in violation of 11 O.S. 22–115.1.

4. [Representative] is such a person to whom 11 O.S. 22–115.1 specifically grants standing to seek a permanent injunction.

5. [Representative] has standing to seek a permanent injunction against [Gonzales].

6. [Representative] does not need to show harm in order to be granted an injunction.

7. [Representative] must [show] only that [Gonzales] is in violation of 11 O.S. 22–115.1 in order to obtain an injunction.

8. [Gonzales] operates a dog kennel within the city limits of Oklahoma City.

9. [Gonzales's] kennel is within 2500 fee[t] of Villa Teresa Moore School, a

school and day care operated by [Representative].

10. [Gonzales's] kennel does not have a final kennel license.

11. Despite the fact that [Gonzales's] kennel has received certain variances and special exemptions from zoning laws, [Gonzales's] kennel has not completed all requirements to receive a license.

12. Because [Gonzales's] kennel does not have a final license, [Gonzales's] kennel is not exempted from application of 11 O.S. 22–115.1.

13. [Gonzales'] kennel is thus in violation of 11 O.S. 22–115.1.

14. Because [Gonzales's] kennel is in violation of 11 O.S. 22–115.1, 11 O.S. 22–115.1 provides that a permanent injunction must issue against [Gonzales], to prevent [Gonzales] from operating a dog kennel within 2500 feet of [Representative's] school.

15. The issue of attorneys' fees and costs is reserved.

WHEREFORE, [Representative's] Motion for Summary Judgment is GRANTED. [State's] Motion for Partial Summary Judgment is GRANTED. Judgment for [Representative] and against [Gonzales]. [Gonzales's] Motion for Declaratory Judgment of Unconstitutionality is DENIED. [Gonzales] is hereby permanently ENJOINED from operating a dog kennel within 2500 feet of Villa Teresa Moore School. . . .

¶ 9 The issues on appeal, as stated by Gonzales, are as follows:

1. Whether the Cleveland County trial court erred in exercising jurisdiction in violation of the priority principle.

2. Whether the Cleveland County trial court erred in finding 11 O.S. Supp.2008 § 22–115.1 constitutional.

3. Whether the Cleveland County trial court erred by not following a prior adjudicated finding of unconstitutionality by the Oklahoma County trial court. Errors include not finding res judicata (claim preclusion) or collateral estoppel (issue preclusion) based upon the Oklahoma County trial court's finding of vested rights and unconstitutionality of 11 O.S. Supp.2008 § 22–115.1.

4. Whether the Cleveland County trial court erred in not finding 11 O.S. Supp. 2008 § 22–115.1 unconstitutional by reason of:

a. being a special law;

b. violating equal protection;

c. being a taking without just compensation;

d. being an ex post facto law;

e. being a bill of attainder; and,

f. being a violation of Okla. Const. Art. 5, § 52 (as found by the Oklahoma County district court).

5. Whether the Cleveland County trial court erred by nullifying the agreed court order of August 17, 2007, in Case No. CJ–2006–9144, Oklahoma County.

6. Whether the Cleveland County trial court erred by finding that Representative has standing to prosecute this action, with no showing of irreparable injury, injury in fact, or the likelihood of injury.

7. Whether the Cleveland County trial court erred by granting a permanent injunction and closing Gonzales's kennel.

8. Whether the Cleveland County trial court erred by not utilizing the four criteria to establish the necessary findings for a permanent injunction.

9. Whether the Cleveland County trial court erred by granting summary judgment to Representative and State. Representative and State are not entitled to summary judgment as a matter of law.

10. Whether the Cleveland County trial court erred by not finding that Gonzales has completed all requirements of the August 17, 2007, agreed court order, and is exempt from application of 11 O.S. Supp. 2008 § 22–115.1. Whether the trial court further erred by ignoring the October 30, 2008, Oklahoma County order which makes findings that the August 17, 2007, order is in furtherance of a kennel license, and exempts Gonzales and his property from 11 O.S. Supp.2008 § 22–115.1.

11. Whether the Cleveland County trial court erred in not granting Gonzales's Motion to Vacate and Motion for New Trial.[14]

## I. Constitutional Claims

¶ 10 We begin with several separately enumerated issues raised by Gonzales in his appeal that attempt to raise constitutional challenges to 11 O.S. Supp.2008 § 22–115.1. Our analysis must start with whether Gonzales has standing on appeal to challenge the constitutionality of 11 O.S. Supp.2008 § 22–115.1.

¶ 11 Standing, which refers to a person's legal right to seek relief in a judicial forum, *"may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte." Hendrick v. Walters,* 1993 OK 162, ¶ 4, 865 P.2d 1232, 1236. (Footnote omitted.) An initial inquiry must reveal that: (1) an actual or threatened injury has occurred; (2) some relief for the harm can be given; and (3) the interest to be guarded is within a statutorily or constitutionally protected zone. *State of Oklahoma ex rel. Board of Regents v. McCloskey Brothers,* 2009 OK 90, 227 P.3d 133; *Hendrick v. Walters,* 1993 OK 162, 865 P.2d 1232; *State of Oklahoma ex rel. Cartwright v. Oklahoma Tax Commission,* 1982 OK 146, 653 P.2d 1230; *Independent School District No. 9 of Tulsa County v. Glass,* 1982 OK 2, 639 P.2d 1233.

¶ 12 "When standing of a party is brought into issue, the focus is on the party seeking to get the complaint [here, the al-leged unconstitutionality of 11 O.S. Supp. 2008 § 22–115.1] before the court, and not on the issues the party wishes to have adjudicated." *State of Oklahoma ex rel. Board of Regents v. McCloskey Brothers,* 2009 OK 90 at ¶ 18, 227 P.3d 133. The question to be answered is whether the person bringing the constitutional challenge is a proper party to request adjudication of that issue and not whether the issue itself is justiciable.[15] The "inquiry posed is whether the party ... has a legally cognizable interest...." *Democratic Party of Oklahoma v. Estep,* 1982 OK 106, ¶ 7, 652 P.2d 271, 274.

¶ 13 To invoke a constitutional analysis of an act of the Legislature—here, 11 O.S. Supp.2008 § 22–115.1—this Court must be presented with a proper case in which the person complaining about the statute has been, or is about to be "denied some right or privilege to which he was *lawfully entitled* ...." *City of Shawnee v. Taylor,* 1943 OK 11, ¶ 4, 191 Okla. 687, 132 P.2d 950, 952. (Emphasis added.) "In other words as a general rule the courts decide questions only when those urging them have *an interest to protect* ...." *Id.*(Emphasis added.)

¶ 14 Gonzales has never operated his kennel lawfully—with a license. Although he applied for a license and took steps to satisfy licensing requirements prior to the enactment of § 22–115.1, the fact is he has never had a kennel license.[16]

¶ 15 Having had no license [17] to operate his dog kennel, he cannot now be heard

14. As we stated in the Standard of Review section of this Opinion, our assessment of the trial court's exercise of discretion in denying Gonzales's "Motion for New Trial and to Vacate Judgment" rests on the propriety of the underlying grants of summary judgment. Thus, the propriety of the denial of the motion for new trial is encompassed within our *de novo* review of the correctness of the summary adjudications.

15. *Flast v. Cohen,* 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

16. If Gonzales had been operating his kennel lawfully with a license, he would have been "grandfathered" in under § 22–115.1(A) and would have been allowed to continue his lawful operation.

17. A license is the "permission by competent authority to do an act which, without such permission, would be illegal...." *Black's Law Dictionary* 829 (5th ed. 1979). "A license gives to the licensee a special privilege not accorded to others and which the licensee otherwise would not enjoy." *Priddy v. City of Tulsa,* 1994 OK CR 63, ¶ 8, 882 P.2d 81, 83. *See Carl v. State of Oklahoma ex rel. Department of Public Safety,* 1995 OK CIV APP 147, 909 P.2d 1196 (driver has no "vested right" to issuance of driver's license and thus no constitutional right to modification of an order revoking that privilege), citing *Robertson v. State of Oklahoma ex rel. Lester,* 1972 OK 126, 501 P.2d 1099; *Brown Distributing Co., Inc. v. Oklahoma Alcoholic Beverage Control Board,* 1979 OK 101, 597 P.2d 324 (no vested property right in liquor store license and no constitutional protection); *Fernhoff v. Tahoe Re-*

to argue that § 22–115.1 operates to deny him a right or privilege to which he was lawfully entitled. Gonzales has identified no right or privilege cloaked with constitutional protection.

¶ 16 Because of the physical location of Gonzales's kennel within 2500 feet of Representative's school, the effect of § 22–115.1 is to foreclose the possibility that some day, Gonzales might receive a license to operate a kennel at that location. In the face of § 22–115.1, no license will issue because of the kennel's proximity to Representative's school. Although Gonzales may argue that the statute operates to deprive him of his property, all that he has lost is the ability to continue *using* his property in an *unlawful* manner for a dog kennel. Gonzales cites no law, and indeed, we have not found any, that finds the loss of an ability to operate unlawfully is the type of loss or denial contemplated as necessary to trigger a constitutional analysis.

¶ 17 Gonzales's circumstances differ from those in *State of Oklahoma ex rel. Board of Examiners in Optometry v. Lawton*, 1974 OK 69, 523 P.2d 1064. In that declaratory judgment lawsuit brought by Lawton, a licensed optometrist, Lawton had been practicing optometry in a leased shopping center office since 1965. That same year, a retail optical outlet leased space in the same building on the opposite side of the hall from Lawton. In 1971, the Legislature passed a bill (59 O.S.1971 § 594) which prohibited any optometrist from practicing "adjacent to or in such geographical proximity to a retail optical outlet." Lawton filed his declaratory

judgment lawsuit, claiming the Board of Examiners in Optometry were about to take action against him for violation of the new law. The trial court rejected the Board's arguments that the controversy was "hypothetical," which the Oklahoma Supreme Court upheld. A declaratory judgment action is meant to ascertain uncertain rights and can be used before any actual breach. "The fact that Lawton could be subjected to criminal prosecution and lose his license if he were found to be in violation of the statute certainly renders it a matter of justiciable controversy." *Id.* at ¶ 9, 523 P.2d at 1066.[18]

 ¶ 18 In this case, however, there is no uncertainty as to Gonzales's rights. He has none. He is not threatened with losing his license. He is not threatened with losing his ability to operate his kennel lawfully because he has never operated his kennel lawfully. Gonzales has not suffered an injury to a legally protected interest as contemplated by constitutional provisions. "Standing to prosecute an appeal must be predicated on that interest in the trial court's decision which is *direct, immediate and substantial.* Conjecture or speculation ... will not suffice...." *Creamer v. Bucy*, 1985 OK CIV APP 19, ¶ 4, 700 P.2d 668, 670, quoting *Underside v. Lathrop*, 1982 OK 57, 645 P.2d 514. Gonzales has not established that the legislation sought to be invalidated detrimentally affects his interest in a direct, immediate and substantial manner.[19] He was operating a kennel unlawfully the day before the enactment of § 22–115.1, as well as the day after.[20]

 ¶ 19 Gonzales argues that the August 17, 2007, order, entered in the Okla-

---

gional Planning Agency,* 622 F.Supp. 121 (D.C.Nev.1985) (land developer who never had a building permit never had a vested right against any zoning changes that might restrict his development of land); *Hannifin v. Morton,* 444 F.2d 200 (C.A.N.M.1971) (person who had applied for issuance of mineral prospecting permits prior to promulgation of regulation imposing rental as a condition to permit issuance had not acquired any vested right under the Constitution protecting him from the payment of rental); *Schraier v. Hickel,* 419 F.2d 663 (C.A.D.C.1969)(the filing of an application for an oil and gas lease that has not been granted is an "expectation" only and it does not give any right to a lease, nor create a legal interest).

**18.** In *Lawton,* the language of the new law was found to be unconstitutionally vague such that

people of common intelligence would have to guess at the meaning and an injunction issued, prohibiting the Board from enforcing the statute.

**19.** "Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." *McNeely v. United States,* 874 A.2d 371, 381 (D.C.2005), quoting *Nicchia v. People of State of New York,* 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235 (1920), and finding a dog owner lacked standing to bring constitutional claim.

**20.** In fact, use of one's property to operate a *licensed* kennel can be constitutionally limited. In *City of La Marque v. Braskey,* 216 S.W.3d 861 (Ct.App.Texas 2007), the landowner who operat-

homa County District Court case, CJ–2006–9144 [21] (the subject of Appeal No. 105,313), created in him a "vested right . . . to operate his kennel and receive all required permits and license necessary." [22] Gonzales cites *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* 1968 OK 73, ¶ 23, 464 P.2d 748, 755, in support of this assertion. That case sets forth the definition of "vested right" as "the power to do certain actions or possess certain things lawfully, and is substantially a property right. It may be created either by common law, by statute or by contract. Once created, it becomes absolute, and is protected from legislative invasion by Art. 5, Secs. 52 and 54 of our Constitution."

¶ 20 Gonzales asserts, with a noted lack of accuracy, that the August 17, 2007, order itself establishes his "vested right." The August 17, 2007, order,[23] the result of a settlement agreement between Gonzales and the Oklahoma City Board of Adjustment, states, in pertinent part, as follows:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that this cause is hereby settled in accordance with the agreement of the parties.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a Special Exception . . . to . . . Chapter 59 [24] of the Oklahoma City Municipal Code, 2002, for "Animal Sales and Services Kennels and Veterinary General" in the AA [Agricultural] District . . . be **granted** by this Court.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the prohibition of a freestanding dwelling on the same lot with any other principal use be **granted** by this Court.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required number of on-site parking spaces be **granted** by this Court.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the parking and striping standards and required curbs be **granted** by this Court.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required handicap spaces be **granted** by this Court.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required

ed a *state-licensed* cat shelter sought injunctive relief, along with a declaratory judgment that the city's kennel location ordinance did not apply to her. The Texas Court of Appeals vacated and dismissed the appeal because the ordinance's restrictions on the landowner's use of her property as a cat shelter did not constitute a threat to a vested property right and thus the trial court did not have jurisdiction to hear the landowner's lawsuit. The court found that the law, prohibiting a kennel within 500 feet of a dwelling, school or church, only affected the way the landowner *used* her property, which was not an absolute right or a constitutionally protected right. The court did not reach the issue of the constitutionality of the penal ordinance itself. *See also Miller v. City of Arcadia,* 121 Cal.App. 660, 9 P.2d 587 (1932), wherein the trial court, affirmed on appeal, upheld the constitutionality of an ordinance limiting the number of dogs that could be kept within 250 feet of any human dwelling

house, the result of which was to shut down the use of the property as a kennel.

21. This case was filed in the Oklahoma County District Court by Gonzales to appeal from the Oklahoma City Board of Adjustment's decision denying requested municipal zoning code variances regarding, for example, parking spaces, curbing, driveway dimensions and a special zoning exception. The Oklahoma County District Court entered the August 17, 2007, order as part of the settlement of the appeal to the district court from the Board of Adjustment's denial.

22. R., at Tab 19, p. 7.

23. R., at Tab 3, "Defendant's Exhibit 4."

24. Chapter 59 of the Oklahoma City Municipal Code is that city's real property zoning code.

22 foot two-way drive aisle leading to a parking area be **granted** by this Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that [Gonzales's] application for a variance ... to ... Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required 10 foot driveway radius be **granted** by this Court.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Court directs [Gonzales] to take the following action:

1. [Gonzales] shall keep no more than 25 dogs on the property.

2. [Gonzales] shall not allow any dogs outside of the enclosed kennel between 7 p.m. and 7 a.m.

3. [Gonzales] shall completely enclose the entire property where the dogs are kept with an 8 ft. cedar fence, and consistently maintain the fence.

4. [Gonzales] may sell no dogs on the premises of the property.

5. [Gonzales] shall install a concrete footer along the entire perimeter of the 8 ft. cedar stockade fence in the event a dog escapes from the property.

¶ 21 Contrary to Gonzales's assertions, the August 17, 2007, order, dealing simply with zoning ordinances and not kennel licensure, did not find that he is entitled to a license for his kennel nor grant such a license.[25] The August 17, 2007, order granted Gonzales's application for variances and a special exception to the City of Oklahoma City Zoning and Planning Code ordinances in Chapter 59 of the Oklahoma City Municipal Code. We reject Gonzales's argument that the August 17, 2007, order created a vested right in a kennel license or to operate his kennel without one.[26]

■ ¶ 22 "A 'vested right' is the power to do certain actions or possess certain things *lawfully* ...." *Wilkerson v. City of Pauls Valley, Oklahoma,* 2001 OK CIV APP 66, ¶ 15, 24 P.3d 872, 876. (Emphasis added.) In *Wilkerson,* the plaintiff, who operated a mobile home park, appealed a zoning commission decision denying the plaintiff a variance from new flood prevention ordinances. The plaintiff claimed the ordinances were unconstitutional because they deprived him of a vested right, which would be protected from legislative invasion, except by due process of law. The Court rejected that argument, noting that the plaintiff had no "vested right" of continual nonconformance. Gonzales, like the plaintiff in *Wilkerson,* simply has no vested right, nor any right at all, to continue operating his kennel without a license. The enactment of § 22–115.1 did not deprive Gonzales of a vested right, there being no vested right in operating a kennel without a license. All the enactment of the statute did was to establish yet one more law that Gonzales was violating by operating his kennel without a license. There is no vested right, subject to constitutional protection, to continue operating a kennel without a license. Nor does any constitutionally protected vested right arise from one's merely being in pursuit of a license and engaging in an effort to satisfy all applicable requirements for licensure.

25. Because we reject that argument, we also find no merit in Gonzales's assertion on appeal that the Cleveland County trial court's order "nullified" the Oklahoma County District Court's August 17, 2007, order. Although a finding of constitutionality by the trial court may have rendered the August 17, 2007, zoning variances and special zoning exception ruling useless to Gonzales in a practical sense, it did not, in any legal sense, render the Oklahoma County August 17, 2007, order a "nullity"—of no legal force or effect.

26. While Gonzales may have complied, so far, with the trial court's directives in the August 17, 2007, order—keeping no more than 25 dogs, not allowing them outside the kennel between 7:00 p.m. and 7:00 a.m., enclosing the property with an eight foot cedar fence with a concrete footer, refraining from selling dogs on the premises, and maintaining the fence—contrary to Gonzales's assertions, the order does not state that compliance entitles Gonzales to a license; nor does the order grant a license or state what the requirements for a kennel license are. The order grants variances and a special exception to the zoning code. It does not address requirements for kennel licensure nor does it command the City of Oklahoma City to issue a kennel license to Gonzales.

¶ 23 Because Gonzales has not, in fact, suffered injury to a legally protected interest by reason of § 22–115.1, he lacks standing to bring a constitutional challenge. *Independent School District No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233. Because we find Gonzales does not have standing to assert his constitutional claim, the question of the constitutionality of 11 O.S. Supp.2008 § 22–115.1 is not one this Court is required to decide at this time.[27] "This court will not pass upon the constitutionality of an act of the Legislature, nor of any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining by reason thereof has been or is about to be denied some right or privilege *to which he was lawfully entitled....*" *Rath v. Maness*, 1970 OK 111, ¶ 19, 470 P.2d 1011, 1014. (Emphasis added.) We therefore decline to address whether the statute is, in fact, constitutional.

## II. Effect of the October 2, 2008, Oklahoma County District Court's Ruling in Case No. CJ–2008–5282

¶ 24 Gonzales also claims the trial court erred in exercising jurisdiction in this case in violation of the "priority principle" for the reason that the district court in Oklahoma County, Case No. CJ–2008–5282 (Appeal No. 106,788) ruled that the statute was unconstitutional "as applied" to Gonzales prior to the trial court's ruling in this case that the statute was constitutional. Gonzales relies on the priority principle set forth in *Autry v. District Court of Muskogee County*, 1969 OK 159, 459 P.2d 865. Gonzales had raised this issue in the trial court on October 8, 2008, when he moved to vacate the trial court's November 12, 2008, ruling that found § 22–115.1 constitutional. According to Gonzales, the Oklahoma County District Court ruling that the statute was unconstitutional

**27.** Even if Gonzales had standing, his claim that § 22–115.1 is a constitutionally prohibited ex post facto law and/or a bill of attainder under Oklahoma Constitution, art. 2, § 15 is also without merit. For a statute to be a prohibited ex post facto law, it must have been enacted subsequent to the conduct *to which it is being applied*. *Gilson v. State of Oklahoma*, 2000 OK CR 14, 8 P.3d 883. Here, the statute is expressly not retroactive. It took effect only on passage. It specifically exempts kennels operating lawfully at the time of enactment. Second, a bill of attainder is a legislative act that inflicts punishment without a judicial trial. *Duncan v. Oklahoma Department of Corrections*, 2004 OK 58, 95 P.3d 1076. Bills of attainder are unconstitutional because they purport to mete out punishment for conduct which precedes the enactment of the legislation. *In the Matter of the Estate of Geller*, 1999 OK CIV APP 45, 980 P.2d 665. In *Geller*, a putative grandchild (claimant) born out of wedlock filed a petition for probate of the putative paternal grandmother's will. The Oklahoma Court of Civil Appeals held that, under *Independent School District No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233, the claimant did not have standing in the probate proceeding under 84 O.S.1991 § 215. The Court also rejected, among the claimant's other arguments, the argument that § 215 was unconstitutional as applied to her as an equal protection violation, an impermissible special law and that it denied her "vested right" to inherit as an ex post facto law and as a bill of attainder. The Court noted that the claimant had no "vested right" to inherit because the *prospect of inheritance* is not a vested right and because there is no punishment being inflicted on the claimant without a judicial trial. The Court further noted that having no vested

right, the application of the law did not retrospectively affect her legal position and thus was not an ex post facto law. Rejecting the claim that the legislation was a bill of attainder, the Court said, "The Oklahoma Supreme Court also has recognized that a statute does not inflict punishment on an individual merely because it prevents him from doing what he otherwise could do in the absence of such statute." *Geller*, at ¶ 23, 980 P.2d at 671, citing *Golden v. Okfuskee County Election Bd.*, 1986 OK 57, 723 P.2d 982. *See also U.S. v. Lovett*, 328 U.S. 303, 324, 66 S.Ct. 1073, 1083, 90 L.Ed. 1252 (1946), wherein the U.S. Supreme Court noted that "[t]he fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation."

We also note that Gonzales appears to rely on the word "prosecution" in § 22–115.1(E) as determining that the statute, which contains no fines or imprisonment provisions, is penal in nature. Civil, as well as criminal cases, can be referred to as being "prosecuted." *See, e.g., State of Oklahoma ex rel. Oklahoma Bar Association v. Southern*, 2005 OK 18, 114 P.3d 422 (attorney's resignation approved by Oklahoma Supreme Court based on attorney's "failure to prosecute" clients' cases alleging violation of federal civil employment discrimination laws.) In fact, Gonzales himself uses the term "prosecute" to refer to the instant civil action in Exhibit C to his Petition in Error—the sixth numbered issue raised.

"as applied" to him [28] should govern, as being "first in time." We disagree.

¶ 25 In *Autry v. District Court of Muskogee County*, 1969 OK 159, 459 P.2d 865, the Oklahoma Supreme Court considered a divorce action in which the wife had sued for separate maintenance in Oklahoma County and a week later, the husband filed an action for divorce in Muskogee County. The Oklahoma Supreme Court cited the general rule that the exercise of concurrent jurisdiction is controlled by the principle of priority. However, the Court limited that general rule and principle in a way pertinent to the instant appeal, stating:

> However, the priority principle is applicable *only when the cases involved are identical as to subject matter, parties, and relief sought*, and the identity as to subject matter, parties and relief sought must be such that a final adjudication of the case in the first court would, as res judicata, be a bar to further proceedings in the second court.

*Autry*, at ¶ 5, 459 P.2d at 867. (Citation omitted and emphasis added.)

 We reject Gonzales's priority principle argument. There is no identity of parties between the instant appeal and the Oklahoma County case, No. CJ–2008–5282 (Appeal No. 106,788). Further, the Oklahoma County trial judge did not address all the constitutional challenges raised by Gonzales in that case that were again raised here. In the Oklahoma County case, filed on June 11, 2008, by Gonzales against State and the City of Oklahoma City, Gonzales requested a declaratory judgment that § 22–115.1 was unconstitutional and that injunctive relief against enforcement of the statute by State and Oklahoma City should be decreed. Representative was not a party to that lawsuit, the trial court having denied her motion to intervene. Her right to seek an injunction was not subject to, or limited by, the Oklahoma County case order filed on October 2, 2008.[29]

### III. Standing of Representative to Sue for Injunctive Relief

¶ 26 Gonzales argues on appeal that Representative "has no standing to prosecute this action, with no showing of irreparable injury, injury in fact, or the likelihood of injury." [30] We disagree.

¶ 27 The statute specifically provides for enforcement of it by any "person aggrieved in any way by noncompliance with said provisions." Enforcement may include a "civil suit for an injunction filed in the district court in the county where a noncompliant dog kennel is located." [31] Representative filed this lawsuit in Cleveland County, where Gonzales's admittedly noncompliant, unlicensed kennel is located, and requested injunctive relief.

 ¶ 28 The Oklahoma Supreme Court, in *In the Matter of the Estate of Geller*, 1999 OK CIV APP 45, ¶ 11, 980 P.2d 665, 668, stated that "[a] party has standing either through a specific statute authorizing invocation of the judicial process or if she alleges a personal stake in the outcome of the controversy. . . ." Here, § 22–115.1, a specific statute, expressly authorizes Representative's invocation of the judicial process through prosecution of a civil injunction. Therefore, we reject Gonzales's argument that Representative lacked standing to bring this lawsuit.

### IV. The Injunction

 ¶ 29 Gonzales complains that Representative did not show the irreparable harm

---

28. The Oklahoma County District Court, in CJ–2008–5282, ruled that because it found the statute unconstitutional as applied to Gonzales under art. 5, § 52, it "does not reach, nor decide, the other six (6) areas of constitutional attacks." Although that trial court decreed that the statute "does not apply to [Gonzales] or this property," it also decreed that "11 O.S. § 22–115.1 is otherwise constitutional."

29. For the same reasons, we reject Gonzales's argument that res judicata and/or issue preclu- sion apply. There are two forms of preclusion recognized by Oklahoma courts: claim preclusion (formerly referred to as res judicata) and issue preclusion (formerly referred to as collateral estoppel). Both require identity of parties. *Miller v. Miller*, 1998 OK 24, 956 P.2d 887.

30. *See* Gonzales's Petition in Error.

31. 11 O.S. Supp.2008 § 22–115.1(D).

or other criteria usually necessary to warrant the granting of injunctive relief, and thus the trial court erred by enjoining Gonzales from operating his kennel. We find this argument to be without merit as well. A violation of a state statute is an injury to the State and its citizens, and a continuing violation is an irreparable injury for which injunctive relief is available. *Western Heights Independent School District No. I-41 v. Avalon Retirement Centers, L.L.C.*, 2001 OK CIV APP 140, ¶ 13, 37 P.3d 962, 965. *See also Independent School District No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233.

## CONCLUSION

¶ 30 Based on our review of the uncontroverted material facts and the applicable law, we find the trial court properly held Representative had standing to bring this lawsuit and request injunctive relief. Gonzales admits he is operating a kennel with 25 dogs within Cleveland County and within the city limits of Oklahoma City without a license and within 2500 feet of Representative's school. Those admissions establish Representative's right to injunctive relief without more.

¶ 31 We also find that Gonzales lacks standing to challenge the constitutionality of 11 O.S. Supp.2008 § 22–115.1, given that he has no vested or other right, whether by virtue of the August 17, 2007, order, entered in Oklahoma County District Court Case No. CJ–2006–9144 (the subject of Appeal No. 105,313) [32] or otherwise that entitles him to constitutional protection for unlawful operation of his unlicensed kennel. Without standing, Gonzales cannot be heard to challenge the trial court's ruling on the constitutionality of the statute.

¶ 32 Further, we find the October 2, 2008, Oklahoma County District Court's ruling in Case No. CJ–2008–5282 (Appeal No. 106,788) that the statute was "unconstitutional as applied" to Gonzales, does not control this Court's decision in the instant appeal. That ruling will be addressed in Appeal No. 106,-788.

¶ 33 For all of the above reasons, we find the trial court's November 12, 2008, order

32. That ruling will be reviewed in Appeal No.

granting Representative's and State's motions for summary judgment and denying Gonzales's motion for summary judgment, as well as the trial court's order, filed on January 23, 2009, denying Gonzales's "Motion for New Trial and to Vacate Judgment," should be, and hereby are, affirmed.

¶ 34 **AFFIRMED.**

WISEMAN, C.J., and FISCHER, P.J., concur.