Evelyn RANDOLPH, an individual, and
Eugene Hellstern, an individual,
Appellants,

v.

BOARD OF REGENTS OF OKLAHOMA
COLLEGES, Appellee.

No. 55804.

Supreme Court of Oklahoma.

June 8, 1982.

Fagin, Hewett, Mathews & Fagin, M. Elizabeth Scott, Ronald E. Stakem, Oklahoma City, for appellants.

Jan Eric Cartwright, Atty. Gen., John F. Percival, Asst. Atty. Gen., Oklahoma City, for appellee.

HARGRAVE, Justice.

Appellants Evelyn Randolph and Eugene Hellstern bring an appeal from the District Court of Oklahoma County in an action brought against the Board of Regents of Oklahoma Colleges. The parties both moved for summary judgment and the trial court granted defendant's motion. Plaintiffs appeal that ruling.

Appellants are both currently employed by Central State University as assistant professors with tenure. In 1978, the Board of Regents amended certain promotion policies which altered the qualifications for consideration of promotion from Assistant to Associate Professor. Prior to 1978, eligibility for promotion required an earned doctorate degree *OR* have 75 hours of graduate credit and have 20 years as a full time member of the staff, in addition to other qualifications. This policy was changed pursuant to Senate Joint Resolution No. 23 of May 19, 1977, which requested the Board of Regents to develop uniform renewal, non-renewal, retirement and promotion policies. These new criteria were issued May 18, 1978 by the Regents, and the Faculty Handbook of Central State University, issued December 19, 1978, reflected this change. The handbook stated "to be eligible for recommendation for promotion to associate professor, a faculty member must have held the rank of assistant professor for four years, have been employed by the university for five or more whole years, either be on tenure or have been recommended for tenure, and hold an earned doc-torate." Plaintiff Randolph was denied consideration for promotion to associate professor on the basis of this change in consideration criteria on July 10, 1978. Plaintiff Hellstern would not be eligible for consideration under the old rule until 1985.

Petition was filed on June 20, 1979 seeking a declaratory judgment to establish plaintiffs' eligibility for promotion to associate professor under the prior criteria. The trial court granted summary judgment to the defendant Board of Regents. Plaintiffs brief three points as demonstrative of the error incipient in that ruling. First, plaintiffs contend the published criteria for consideration of the promotion to associate professor constituted a unilateral contract and the offer thereof could not be withdrawn after substantial performance had occurred. Second, plaintiffs contend that assuming the change here challenged could be validly instituted, the regulation as adopted is not in accord with the specific legislative intent expressed in the joint resolution fomenting the policy change and the new criteria are thereby invalid. The third contention of plaintiffs states the appellee should be equitably estopped to apply the 1978 policy change to them.

In this third contention, appellants characterize the first requirement for consideration of promotion as evinced in the 1975 guidelines as a unilateral contract, citing *Harvey v. National Bank of Commerce of Tulsa, Okl.*, 504 P.2d 424 (Okl.1972). Thus a unilateral contract confers a promise to provide a benefit if the offeree performs. This offer becomes irrevocable, appellants state, when a substantial completion of the performance requested is complete. *Dangott v. ASG Industries, Inc.*, 558 P.2d 379 (Okl. 1976). Appellee concedes the correctness of those authorities as abstract legal propositions but denies their applicability to this action.

■ It is here stated that the appellee's denial of the applicability of the unilateral contract authority is a proper statement of the law. The appellants have a year-to-year contract reduced to writing. It is that

contract which defines the respective duties of the parties and it states the contract is subject to all rules and regulations of the Board of Regents, the laws and constitutions of Oklahoma and the United States, and the policies of the University. To hold the Regents irrevocably bound to honor the rules and regulations enacted at the time a professor began his employment so long as that professor was employed would result in a myriad of different regulations applicable at one time depending upon the date of employment of each individual. The result of such a holding would be the policies of employment and promotion could not be changed uniformly for the State as required by the above noted joint resolution for the period of a working lifetime. Such result is clearly not within the contemplation of the resolution.

■ The right to be considered for promotion set out by appellants did not accrue until plaintiffs had met certain qualifications and during the existence of the prior criteria for consideration of promotion plaintiffs did not fulfill these requirements. The "right" to be considered for promotion was therefore expectant or contingent. There can be no question but that the Board of Regents has all power necessary to accomplish the objects it was constitutionally empowered to achieve and is therefore authorized to enact rules, regulations and bylaws for the good government and management of the university and its every department. *Baker v. Carter*, 165 Okl. 116, 25 P.2d 747 (1933), *Rheam v. Bd. of Regents*, 161 Okl. 268, 18 P.2d 535 (1933), *Pyeatte v. Bd. of Regents of Univ. of Okla.*, 102 F.Supp. 407, Aff. 342 U.S. 936, 72 S.Ct. 567, 96 L.Ed. 696.

The case of *Atchison v. Dietrich*, 315 P.2d 265 (Okl.1957) discusses the distinction between vested and contingent rights. In doing so this Court quoted from *Pearsall v. Great Northern Rwy. Co.*, 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838, stating in substance the following: Generally rights are vested when the present or prospective right to enjoyment has become the property of some particular person as a present interest.

Contrarily, rights are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent vesting.

In enacting uniform promotion criteria the Board of Regents was exercising the full authority granted by Okla.Const.Art. 13–B, § 1 and § 2 vitalized by 70 O.S.1971 § 3510(a), empowering the Regents to "Adopt such rules and regulations as it deems necessary to govern each of the institutions under its jurisdiction." The Regents, in enacting the questioned regulation for consideration of promotion, have, as far as concerns these two plaintiffs, changed a regulation which conferred a contingent right. Neither plaintiff had fulfilled the conditions precedent to compliance prior to the change in the regulation. *Atchison, supra*, notes that legislation is capable of revoking contingent interests existing at the time, quoting from *MacMillan v. Branch Banking & Truck Co.*, 221 N.C. 352, 20 S.E.2d 276:

"... mere expectancy of future contingent interests ... do not constitute 'vested rights' such as would deprive the legislature of the power to enact [the] statute authorizing revocation of a voluntary grant."

■ Considering the constitutional and statutory mandate that the Board of Regents take such steps as it deems necessary to properly administer the colleges and universities under its control and direction and the contingent, not vested, interest plaintiffs had in the old promotion policies, it is concluded that the Board of Regents was authorized under the laws of this state to change the criteria for promotional consideration and that that rule was validly applied to all parties not meeting the old promotion criteria prior to the change in the rule.

■ Plaintiffs propose that the Board should be considered estopped to deny the old promotion policy applies to the plaintiffs here. The public policy of the state as it refers to higher education at present is illustrated by the promotion policy currently

**828**

in force which requires an earned doctorate for promotion to associate professor. Generally, estoppel does not work against the state or its agencies, *Board of Education of Independent School District No. 48, Hughes Cty. v. Rives,* 531 P.2d 335 (Okl.1975), except where its invocation furthers a public policy or interest. *Independent School District No. 4 v. State Bd. of Education,* 451 P.2d 684 (Okl.1969). Here plaintiffs attempt to estop the state, through the Board of Regents, from enforcing a public policy of promotion to associate professors of only those persons demonstrating academic excellence through receipt of a doctoral degree, and thus the plaintiffs may not urge estoppel to thwart this policy.

Plaintiffs lastly urge the common practice of higher educational institutions provides for either a grandfather exemption or a phase-in period for application of new promotion regulations to employees currently in-service. This Court deems it unnecessary to examine the record for proof of such a "common law of universities" as is offered. Assuming its existence, such a trade practice falls to the mandate of the rules promulgated by the Board of Regents just as the common law of jurisprudence ceases to have force and effect in the face of contrary positive legislation.

Measured against the errors alleged by plaintiff appellants, the decision of the trial court is free of reversible error and the decision of the trial court is therefore affirmed.

AFFIRMED.

All Justices concur except OPALA, J., who concurs in part and dissents in part.