1998 OK CIV APP 7

1998 OK CIV APP 7

**PERKINS WHISTLESTOP, INC.,**
**Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION,**
**Defendant/Appellant.**

**No. 87795.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Nov. 25, 1997.

R.L. Hert, Jr., Hert & Baker, Stillwater, for Appellee.

William J. Rinehart, Oklahoma Department of Transportation, Oklahoma City, for Appellant.

BUETTNER, Judge.

¶ 1 Appellee Perkins Whistlestop, Inc. (Whistlestop) sued Appellant, State of Okla-

homa, ex rel. Department of Transportation (ODOT), for inverse condemnation of one acre in Payne County in which Whistlestop held a leasehold interest. Whistlestop alleged that a taking had occurred when ODOT agreed to plug a tin whistle drainage pipe to benefit another landowner and such plugging resulted in intermittent flooding of Whistlestop's leasehold. ODOT joined the landowners Kenneth and Helen McWherter (Landowners) as third-party defendants. After jury trial held March 18–20, 1996, the jury returned a verdict for Whistlestop and awarded damages of $160,000. The jury also found in favor of the Landowners, but ODOT did not appeal that finding. Because we find that a taking occurred, that ODOT has failed to allege any errors regarding the trial, and that there is no basis in the record to disturb the jury's verdict, we affirm the judgment.

¶ 2 In 1959, ODOT placed a drainage culvert near the intersection of State Highways 33 and 177 in Payne County. In 1984, ODOT renovated and widened Highway 33. Harland Wells, owner of Whistlestop, testified that after ODOT replaced the culvert as part of the highway widening project, sand from the banks of the drainage ditch would routinely stop up the culvert. Wells testified that he hired companies to pump the water standing on Whistlestop's leasehold for thirty months between 1986 and 1992. Wells testified that the standing water in the Whistlestop driveway prevented customers from pumping gasoline and gave the impression that the fuel he sold had water in it. The water also caused Whistlestop's septic tank to stop working. Wells further had to patch the asphalt driveway three times between 1986 and the time of trial. In the spring of 1993, Wells testified, the water rose to 16–18 inches inside the Whistlestop store causing it to be shut down for 52 days. This water damage resulted in Wells having to renovate the interior of the Whistlestop store, replace the compressor on the walk-in cooler, replace switch plates, and clean the motors on the fuel pumps. In 1995, the Whistlestop store was closed for 18 days due to flooding.

¶ 3 Although Whistlestop experienced flooding when the culvert was stopped up, when the culvert was open, after the renova-

tion of the highway, land south of Highway 33 and south of Whistlestop was flooded. The owners of that property, the Holbrooks, sued ODOT in 1992 for inverse condemnation of their land through flooding. In a 1993 settlement agreement, ODOT paid the Holbrooks for a flowage easement across their land, but also signed an agreement to cease draining water onto the Holbrook's property by closing the drainage culvert. The culvert was closed under a temporary restraining order February 3, 1987. The journal entry of the settlement agreement in which ODOT agreed not to reopen the culvert was filed in 1993. The closing of the culvert resulted in regular flooding of Whistlestop's property.

¶ 4 Whistlestop responded by filing its petition for inverse condemnation May 28, 1993. Whistlestop alleged that it held a leasehold interest in one acre of the Landowner's property.[1] Whistlestop next alleged that when ODOT widened the highway in 1984 it moved the drainage culvert which altered the drainage of Whistlestop's leasehold. Whistlestop further alleged that by agreeing, in its settlement with the Holbrooks, to permanently close the culvert, ODOT effected a taking of Whistlestop's property interest and that such taking will continue until ODOT "ceases to use the Leased Premises as an easement for the impoundment and storage of water." Whistlestop finally alleged that ODOT refused to initiate condemnation proceedings or pay just compensation to Whistlestop and that Whistlestop was therefore forced to bring its claim for inverse condemnation.

¶ 5 Whistlestop filed a motion to dismiss ODOT's appeal which we address first. Motions to dismiss an appeal are governed by Supreme Court Rule 1.6(c). Whistlestop argued the appeal should be dismissed because ODOT had fully paid the judgment and because ODOT failed to appeal the verdict as to the Landowners. At oral argument, Whistlestop conceded that payment of the judgment is not grounds for finding acquiescence in the judgment unless such intent is evident from the circumstances. *Grand River Dam Authority v. Eaton,* 1990 Okla. 133, 803 P.2d

---

1. Whistlestop had leased the property since 1976. The current lease began in 1982 and expired in 1997, although it contained an option to renew.

705, 708–9. We accordingly address only the issue of whether ODOT was required to appeal the judgment as to both Whistlestop and the Landowners in one appeal.

¶ 6 Whistlestop argues that in a condemnation proceeding involving multiple interest owners, there must be one judgment which then must be apportioned among the various interest owners. *Grand River Dam Authority v. Gray*, 192 Okla. 547, 138 P.2d 100 (1943), *citing State ex rel. McCaskill v. Hall*, 325 Mo. 165, 28 S.W.2d 80, 81 (1930).[2]

¶ 7 However, Whistlestop has presented no authority that this rule has been applied in an inverse condemnation proceeding. In an inverse condemnation proceeding, the landowner (or other interest owner), rather than the state, seeks to be compensated for an alleged taking. We have found no authority requiring the plaintiff in an inverse condemnation proceeding to join all interest owners in the property.[3] ODOT here joined the Landowners as third-party defendants and the jury found that ODOT had taken an easement over the Landowners' property. We are not persuaded that the rule announced in *Gray, supra*, results in ODOT waiving its right to appeal the judgment as to Whistlestop by its decision to not appeal the judgment as to the Landowners. Certainly, for ODOT to have appealed the judgment only as to one interest owner, the issues on appeal will be limited to those relating to that interest owner, Whistlestop.[4] We therefore deny Whistlestop's motion to dismiss the appeal.

¶ 8 In its two propositions of error, ODOT alleges the trial court erred in denying its two motions to dismiss filed before trial. ODOT filed motions to dismiss February 4, 1994 and June 19, 1995. In its first motion to dismiss, ODOT argued that Whistlestop did not have standing to sue in inverse condemnation because Whistlestop holds only a leasehold and alleged only a business loss. ODOT also argued that Whistlestop had failed to state a claim for relief because first, the water was standing on what ODOT refers to as a natural sump which has no natural drainage, and second, Landowners own the land on which the water was standing and therefore own the standing water and ODOT could not drain it without being liable to Landowners.

¶ 9 We first note that a pleading may not be dismissed for failure to state a claim "unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle him to relief." *Hayes v. Eateries, Inc.*, 1995 OK 108, 905 P.2d 778, 780, *citing Frazier v. Bryan Memorial Hospital Authority*, 1989 OK 73, 775 P.2d 281, 287. We therefore determine whether Whistlestop's petition satisfied this test.

¶ 10 A leasehold interest may be subject to a taking and the leaseholder may have a cause of action in inverse condemnation. See *Grand River Dam Authority v. Brogna*, 1991 OK CIV APP 104, 827 P.2d 901 (leasehold interest in oil and gas is in nature

---

**2.** The court in *Gray* recited the rule that condemnation proceedings are actions in rem and that damages to the land are to be ascertained as though it was owned by a single person, and the total apportioned among the different interest owners according to their respective rights. 138 P.2d at 102. In a condemnation action, the condemning authority has no interest in the apportionment of damages.

**3.** Courts in other states have held that variations on the rule that a single award must be made and then apportioned among interest owners also applies in inverse condemnation awards, but these cases have not required that all interest owners be joined in the inverse condemnation action or appeal. See *State of Tennessee ex rel. Shaw v. Shofner*, 573 S.W.2d 169 (Tenn.App. 1978); *Gifford v. City of Colorado Springs*, 815 P.2d 1008 (Colo.App.1991); *Barber v. State*, 703 So.2d 314 (Ala.1997).

**4.** For example, it would be incongruous for ODOT to appeal the taking issue as to the lessee but not as to the landowner. *Gray* teaches that there is but a single taking. 138 P.2d at 102. Thus, contrary to ODOT's assertion at argument that it was appealing the taking issue, and that the Landowners would be bound by an appellate decision regarding whether a taking had occurred, ODOT's failure to include the Landowners in the appeal forecloses our consideration of this general issue applicable to both lessee and landowner. See *Tinker Investment & Mortg. Corp. v. City of Midwest City*, 1994 OK 41, 873 P.2d 1029, 1037 (party which had entered an appearance below, was a party appellee and failure to serve that party with the petition in error or other notice of appeal was fatal, and prevented court from granting corrective relief against that party.)

of property right such that leaseholder had right to intervene in condemnation proceeding); *State ex rel. Cartwright v. Dunbar,* 1980 OK 15, 618 P.2d 900; 26 Am.Jur.2d *Eminent Domain,* § 177 ("valid contracts are property which is protected . . . by the Fourteenth Amendment against the taking by a state, unless just compensation is made to the owner."). Further, business losses are admissible to prove the diminution in fair market value of the property taken. *State ex rel. Department of Highways v. Robb,* 454 P.2d 313 (Okla.1969). We therefore find that Whistlestop had standing and stated a claim for relief in its petition. The trial court accordingly did not err in denying ODOT's first motion to dismiss.

¶ 11 In its second motion to dismiss, ODOT again alleged that Whistlestop had failed to state a claim for relief because its leasehold was located in a natural sump without additional drainage.[5] Again ODOT asserted that Landowners therefore owned the accumulated water and Whistlestop could not expect ODOT to drain its leasehold without incurring liability to downstream landowners. ODOT argued that, as in *Branch v. City of Altus,* 195 Okla. 625, 159 P.2d 1021 (1945), the culvert had not become a natural watercourse such that Whistlestop had become entitled to such drainage. However, it remained for trial to determine whether the drainage culvert had become a natural watercourse. We therefore find that Whistlestop had stated a set of facts which might entitle it to relief.

¶ 12 ODOT also argued in its June 19, 1995 motion to dismiss that Whistlestop's petition was subject to dismissal for estoppel because Whistlestop failed to participate in the inverse condemnation action of the Holbrooks. Whistlestop responded to this argument by alleging that ODOT could have joined all potentially affected interest owners in the *Holbrook* case and chose not to. Further, Whistlestop responded that it presumed that ODOT would acquire an easement in the *Holbrook* case to continue the

drainage that the culvert had provided since 1959. Estoppel is a mixed question of fact and law. *Oxley v. General Atlantic Resources, Inc.,* 1997 OK ——, 936 P.2d 943, 946. Beyond rearguing its estoppel claim asserted in its motion to dismiss, ODOT has failed to provide authority that its motion to dismiss should have been granted on estoppel grounds. We find this issue was properly reserved for trial.

¶ 13 Whistlestop offered facts in its petition and amended petition which could support a claim for relief. We therefore find the trial court correctly denied both motions to dismiss filed by ODOT before trial. Because ODOT has not alleged error regarding the conduct of the trial or the jury's verdict, we affirm the judgment.

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

5. ODOT alleged that this fact was the "law of the case" from the *Holbrook* case. However, the parties to the *Holbrook* case were not identical to the parties in the instant case, nor has the *Holbrook* settlement been the subject of an appellate opinion.. We consequently find no application for the "law of the case" doctrine. The settled-law-of-the-case doctrine operates to bar relitigation of issues in the same case once decided by an appellate opinion. *Fent v. Oklahoma Natural Gas Co.,* 1994 OK 108, 898 P.2d 126.