OSCN Found Document:MATERIAL SERVICE CORP. v. TOWN OF FITZHUGH

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 MATERIAL SERVICE CORP. v. TOWN OF FITZHUGH
2015 OK CIV APP 13
343 P.3d 624
Case Number: 109966
Decided: 08/14/2014
Mandate Issued: 02/13/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 13, 343 P.3d 624

 

MATERIAL SERVICE CORPORATION, Plaintiff/Appellant,
v.
TOWN 
OF FITZHUGH, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
PONTOTOC COUNTY, 
OKLAHOMA
HONORABLE TOM S. LANDRITH, TRIAL JUDGE

AFFIRMED

Elizabeth C. Nichols, Elizabeth C. Nichols, P.C., Edmond, Oklahoma, for 
Plaintiff/Appellant,
Jason D. Christopher, Sweeney, Smith, Draper & 
Christopher, P.L.L.C., Ada, Oklahoma, for Defendant/Appellee.


Wm. C. Hetherington, Jr., Vice-Chief Judge:
¶1 In the second appeal in the parties' zoning controversy, Plaintiff 
Material Services Corporation (MSC) appeals the trial court's declaratory 
judgment in favor of Defendant Town of Fitzhugh (Town), in Pontotoc County, 
Oklahoma, entered after a non-jury trial over the validity of Town's new zoning 
ordinance prohibiting MSC's proposed operation of a limestone quarry within the 
corporate limits.
STANDARD OF REVIEW
¶2 Under the Declaratory Judgments Act, the determination of a competent 
court is reviewable in the same manner as other judgments. 12 O.S. 2011 § 1654. "A suit for 
declaratory judgment pursuant to § 1651 is neither strictly legal nor equitable, 
but assumes the nature of the controversy at issue." Macy v. Oklahoma City 
School Dist. No. 89, 1998 OK 
58, ¶ 11, 961 P.2d 804, 
807.
¶3 The judgment on appeal is comprised of both findings of facts and 
conclusions of law.[1] When a trial court's declaratory judgment order 
decides a question of law, we review the decision under a de novo 
standard, which requires review of the record to determine whether the trial 
court erred. Cherokee Nation v. Nomura, 2007 OK 40, ¶ 11, 160 P.3d 967, 972. When a 
proceeding under the Declaratory Judgment Act involves the determination of an 
issue of fact, such issue must be tried and determined in the same manner as 
issues of fact are tried and determined in other civil actions in the court in 
which the proceeding is pending. 12 
O.S.2011 §1656.
¶4 Proceedings in district court on appeals from Boards of Adjustment in 
zoning matters are generally characterized as being equitable in nature. The 
question on review of such cases is whether the judgment of the district court 
is clearly contrary to the weight of the evidence. Triangle Fraternity v. 
City of Norman ex rel. Board of Adjustment, 2002 OK 80, ¶ 11, 63 P.3d 1 (citing Bankoff v. 
Board of Adjustment of Wagoner County, 1994 OK 58, 875 P.2d 1138).
¶5 Although this appeal is not brought from a district court's review of a 
board's zoning decision, the nature of this declaratory judgment action, 
i.e., the validity of Town's zoning ordinance and whether it applies 
retroactively to MSC's 2003 Mining Lease, is also equitable, and we will sustain 
the trial court's ruling unless clearly contrary to the weight of the evidence. 
Bankoff v. Board of Adjustment of Wagoner County, 1994 OK 58, ¶ 14, 875 P.2d 1138, 1143. In equitable 
actions, this Court "presumes the district court's findings of fact are correct 
and will not disturb such findings on appeal unless they are clearly contrary to 
the weight of the evidence." Pine Island RV Resort, Inc. v. Resort 
Management, Inc., 1996 OK 83, 
¶ 18, 922 P.2d 609, 613. Also the 
credibility of witnesses and the weight and value of their testimony are 
questions exclusively for the factfinder. Id. Finally, a correct judgment 
will be affirmed, regardless of the reasons given, if it is sustainable on any 
rational theory and the ultimate conclusion reached is legally correct. 
Bankoff at ¶17.
FACTUAL AND PROCEDURAL HISTORY
¶6 MSC is an Oklahoma corporation primarily in the business of crushing 
limestone for highways and other construction, who has as its President and 
manager, Larry Stewart. MSC is a wholly-owned subsidiary of Stewart Stone Inc., 
an Oklahoma corporation, a family business started in 1977 by Mr. Stewart's 
grandfather and father.
¶7 According to the record, parties' joint stipulated facts (JSF) adopted by 
the trial court, and uncontroverted trial testimony relevant to the background 
of this dispute, MSC "entered into a valid lease on January 3, 2003" with 
Jeffery and Julia Luke, "owners of Section 22, Township 2 North, Range 5 East, 
in Pontotoc County, for purposes of operating a mining quarry" (2003 Mining 
Lease).[2] JSF 
#2. According to Mr. Stewart, the "only property right MSC was granted was the 
right to mine."[3]
¶8 In April 2003, MSC employed Terry Fox from Triad Environmental to prepare 
its Application for a mining permit for submission to the Oklahoma Department of 
Mines (ODM), during which Fox determined there was no zoning affecting the 2003 
Mining Lease. MSC "submitted its Application [for Non-Coal Permit] with ODM then 
on June 25, 2003," which described certain property in the 2003 Mining Lease 
(Fitzhugh Site). JSF # 3. Following ODM's required publications of notice, 
"individuals objecting to MSC's Application requested an informal conference," 
held November 4, 2003, at which the objectors expressed their opposition to MSC 
mining the site and their intent to pass zoning ordinances to prohibit the 
mining. JSF # 6.
 
¶9 Mr. Stewart attended a town council meeting in February 2004 at which 
interim zoning was discussed, announced MSC would protect its rights, including 
the filing of a lawsuit against Town and its members. On February 10, 2004, MSC 
filed a declaratory judgment against Town in Pontotoc County District Court 
(Case No. C-04-121),[4] seeking to establish Town was not properly 
incorporated in 1985 and lacked authority to enact zoning ordinances. The trial 
court disagreed and granted Town's summary judgment motion, finding Town's 
incorporation was valid, notice of such had been posted and duly published, and 
there was no annexation. MSC moved for a new trial.
¶10 "On November 19, 2004, ODM issued a Notice of Departmental Decision," as 
modified, granting MSC a mining permit which would become final in 30 days 
unless timely written requests for a hearing were filed. JSF #9. "On 
December 17, 2004, residents of [Town] requested a formal conference in the ODM 
matter." JSF # 10.
¶11 "On December 27, 2004, the Town's Trustees voted on the First Zoning 
Ordinance." JSF # 11. That Ordinance prohibited, inter alia, "any person, 
firm or corporation . . .to establish, open up, commence or carry on any 
commercial. . .quarry or surface mine within the corporate limits of [Town]." 
The First Zoning Ordinance, published January 6, 2005, included a grandfather 
clause for nonconforming uses as required by state law.[5] "There were no zoning restrictions in 
[Town] prior to December 2004." JSF #1.
¶12 On January 10, 2005, Chuck Barton and other individuals filed an action 
against MSC and its parent corporation, Stewart Stone, in Pontotoc County 
District Court, (Case No. C-05-27), seeking a determination the First Zoning 
Ordinance was valid and requesting a permanent injunction prohibiting MSC from 
operating its proposed mine (Barton case). JSF #14. Eight days later in the ODM 
administrative proceeding, counsel for the objecting parties "requested the ODM 
Administrative Law Judge [ALJ] take judicial notice that there had been a valid 
zoning passed on December 27, 2004, which prevented MSC from mining the 
[Fitzhugh] Site." JSF # 15. "In accordance to OAC 460:10-9-4, ODM cannot issue a 
mining permit which will violate a zoning statute." JSF #13.
¶13 On January 24, 2005, MSC filed a petition against Town and its five 
Trustees in the Pontotoc County District Court (Case No. C-05-50), alleging, 
inter alia, intentional interference with contract and with its 
prospective business, an unconstitutional taking of its property interest, and a 
declaratory judgment of the validity and application of the First Zoning 
Ordinance. JSF #16.
¶14 "On February 6, 2005, Town's Trustees passed the Second Zoning Ordinance, 
and it was published February 14, 2005." JSF#17. "The Second Zoning Ordinance 
did not comply with publication requirements of the Open Meetings Act." 
Id. On March 1, 2005, MSC filed a counter-claim in the Barton Case 
(C-05-27), re-alleging its two intentional interference theories of recovery 
against individual plaintiffs, which MSC later amended to include declaratory 
judgment concerning the validity of both zoning ordinances. JSF #18.
¶15 A week before the formal hearing scheduled in the ODM administrative 
proceeding concerning MSC's mining permit, MSC filed a motion on April 4, 2005, 
seeking a stay of such proceeding until a decision on the validity of Town's 
zoning ordinance in district court. Three days later, the ODM ALJ granted the 
stay.[6]
¶16 In May of 2005, MSC filed an appeal with the Supreme Court from the trial 
court's April 2005 order denying MSC's motion for new trial in C-04-121 
(challenge to Town's incorporation in 1985). Another division of the Court of 
Civil Appeals (Case No. 102,081) affirmed the court's denial in October 2005 by 
an unpublished opinion, finding MSC's challenge to Town's 1985 incorporation was 
time-barred under 11 O.S.2001 § 
2-107.
 
¶17 On November 3, 2005, the trial court filed an order consolidating MSC's 
Case No. C-05-50 with the Barton Case (C-05-27).[7] In January 2006, the Supreme Court 
denied MSC's petition for certiorari in No. 102,081 (C-04-121), and mandate was 
subsequently issued. On February 10, 2006, MSC filed a limited dismissal without 
prejudice of all its theories of recovery alleged in the consolidated cases 
except for its request for declaratory relief.
¶18 "On April 3, 2006, Town voted on and enacted its Third Zoning Ordinance." 
JSF #22. On June 4, 2007, MSC requested a variance of the subject property at a 
regular town meeting, which Town denied. JSF # 23 & 24. That same year MSC 
filed two amended petitions and counterclaims to include, inter alia,[8] all the 
theories of recovery it had previously dismissed.[9]
¶19 For reasons not shown in the record, no action was taken by any party in 
the consolidated cases between the end of 2008 through until July 19, 2010, when 
the court's Pretrial Conference Order was filed.[10] The latter order lists only MSC's 
inverse condemnation/taking theory and request for declaratory judgment over the 
validity of Town's first two zoning ordinances, which MSC alleged were "fatally 
flawed" pursuant to 11 O.S. 2001 § 
43-104.[11]
¶20 A year later, MSC and Town agreed to submit three questions to the court 
for declaratory judgment, listed in the Pretrial Conference Order filed July 18, 
2011:
 

 
 1) Was the zoning enacted by the Town of Fitzhugh proper as it relates to 
 MSC as lessee?
 2) Is MSC entitled to a non-conforming use designation pursuant to 
 Bankoff [v. Board of Adjustment of Wagoner County, 1994 OK 58, 875 P.2d 1138]?
 3) Which party prevails in a balancing of the equities test in 
 Bankoff?
¶21 At the declaratory judgment hearing held in August 2011 to decide the 
same three questions, the trial court expressly adopted the parties' joint 
stipulated facts attached to its last PTC Order. MSC called two witnesses, Larry 
Stewart, and an employee of ODM, Brett Sholar. After MSC rested and the court 
denied Town's demurrer to the evidence, Town called one witness, Joe Bradshaw, a 
Town Trustee for over twenty years. Both parties submitted numerous exhibits the 
court admitted into the record. Following closing statements, the parties were 
ordered to prepare proposed findings of fact and conclusions of law by a set 
date.
¶22 Relying on certain joint stipulated facts and trial testimony, the trial 
court made numerous findings of facts and in the Judgment's final paragraph 
expressly found:

 [MSC] never received a mining permit for the Fitzhugh site, consequently 
 [MSC] never had a vested property right to mine at the Fitzhugh site. 
 The zoning ordinances for [Town] which in effect prohibited [MSC] from mining 
 at the Fitzhugh site are valid and did not take a vested property right of 
 [MSC]. (Emphasis added.)
The court then entered judgment in favor of Town and against MSC, whose 
appeal followed.[12]
 
ANALYSIS
 
¶23 Six of MSC's seven propositions in its Brief in Chief may be reduced to 
two alternative arguments:[13] 1) Town's Third Zoning Ordinance cannot be applied 
retroactively to MSC because its mining lease is a constitutionally-protected 
vested property right, and 2) even if the lease is not vested, it would be 
inequitable to give effect to that zoning ordinance based on application of the 
"balancing of equities test" adopted in Bankoff to the facts of this 
case. Town correctly points out MSC has expressly conceded the validity of the 
Third Zoning Ordinance.
¶24 To support MSC's position that its mining lease is a vested 
property right entitled to constitutional protection, it cites to several 
Oklahoma inverse condemnation cases, the first of which similarly involved the 
lessee's intended use of a mining leasehold interest,[14] whereas the last two 
clearly involved leasehold interests which uses thereof had existed 
lawfully for many years.[15] "It is axiomatic that under ordinary circumstances 
a zoning enactment cannot be applied retroactively to require destruction 
of an existing structure or a substantial change in an existing lawful 
use of property." (Emphasis added.) Bankoff v. Board of Adjustment 
of Wagoner County, 1994 OK 
58,¶ 8, 875 P.2d 1138. 
However, none of the three cases addresses the specific issue raised in this 
case - does MSC's mining lease constitute a vested property right such as would 
prevent retroactive application of Town's subsequently-enacted zoning 
ordinance.
¶25 MSC also relies on Oklahoma's long-observed definition of a "vested 
right" as "the power to do certain actions or possess certain things 
lawfully, and is substantially a property right . . . created by common law, 
by statute, or by contract" and "when it has been once created, and has become 
absolute, it is protected from the invasion of the Legislature by those 
provisions in the Constitution which apply to such rights." Baker v. Oklahoma 
Firefighters Pension and Retirement System, 1986 OK 8, ¶4, 718 P.2d 348.
¶26 Property rights "are created by common law, by statute, or by contract." 
Id. In this case, MSC's property rights were created by the 2003 Mining 
Lease. A "lease is a contract between the lessor and lessee . . . .[that] 
becomes a grant of an estate in real property when it takes effect in 
possession." Ferguson v. District Court of Oklahoma County, 1975 OK 167, ¶ 6, 544 P.2d 498, 499. During a lease, 
"the lessee holds an outstanding leasehold in the premises which for all 
practical purposes is equivalent to absolute ownership. The estate of the 
lessor during such time is limited to his reversionary interest which ripens 
into perfect title at the expiration of the lease." (Citations omitted.) 
Id.
¶27 We agree a leasehold interest is generally a valuable property interest 
which in Oklahoma, if taken by inverse condemnation, the lessee has a right to 
share in the award, absent an agreement to the contrary with the lessor. 
State ex rel. Oklahoma Capitol Improvement Authority v. United States Beef 
Corp., 2002 OK CIV APP 81, ¶ 
6, 52 P.3d 1052, 1054. However, "rights are vested when the present or 
prospective right to enjoyment has become the property of some particular person 
as a present interest." Randolph v. Board of Regents of Oklahoma 
Colleges, 1982 OK 75, ¶ 7, 648 P.2d 825, 827. 
"Contrarily, rights are contingent when they are only to come into 
existence on an event or condition which may not happen or be performed until 
some other event may prevent vesting." (Emphasis added.) Id.
¶28 At the declaratory hearing, Mr. Stewart, affirmed the parties' joint 
stipulation by testifying "the only right he had in the mining lease was the 
right to mine or quarry rock."[16] In Oklahoma, "the existing applicable law is part 
of every contract as if it were expressly referred to or incorporated within the 
agreement." Welty v. Martinaire of Oklahoma, Inc., 1994 OK 10, ¶ 11, 867 P.2d 1273, 1276. "A state may 
impose statutory limits on the right to contract where the limitation is a 
reasonable exercise of its police power, and in such case the statute is an 
implied part of the contract, with obligations subject to the prohibitions in 
the statute." Id.
¶29 Pursuant to Oklahoma's Mining Lands Reclamation Act (the Act), 45 O.S. 2001 § 724(A), the version 
in effect when the 2003 Mining Lease was executed in 2003, "it shall be 
unlawful for any operator to engage in any mining operations in this 
state without first obtaining a permit . . . from the Oklahoma Department 
of Mines for each separate mining operation." (Emphasis added.) The public 
policy of the Act, provides, inter alia, for the reclamation and 
conservation of land subjected to surface disturbance by mining, preservation of 
natural resources, to prevent erosion, and to protect and promote the health, 
safety and general welfare of the people of this state. 45 O.S. 2001 §722.
¶30 MSC, as owner and operator of numerous limestone mines throughout 
Oklahoma for many years and with extensive predominantly successful experience 
with the ODM permit process, does not dispute the Act's mandatory permit is a 
reasonable exercise of this state's police powers. However, MSC's claim to a 
vested property right fails to consider the result of § 724(A) being an 
implied part of its 2003 Mining Lease - its right to mine granted by that 
lease "will only come into existence upon an event or condition which may not 
happen," in other words, it is contingent on MSC obtaining the 
statutorily-required permit from ODM.
¶31 As the record and trial testimony reveals, ODM's Notice of Department 
Decision (Notice) approved MSC's application for the mandated § 724(A) permit 
"as modified," which expressly detailed four "conditions" applicable to the 2003 
Mining Lease. Also relevant is the Notice's provision that "any person with an 
interest may request a formal hearing . . . [which] must be filed with [ODM] in 
writing within thirty (30) days of receipt of this notice. If no request is 
received, the decision of the [ODM] will become final." Thus, MSC's right to 
receive the permit was clearly contingent on several conditions or events, one 
of which the record demonstrates undisputedly occurred in this case, 
i.e., the timely filing of a written request for a formal hearing by 
those objecting to the Notice.
¶32 It is also stipulated by the parties that five days prior to the formal 
hearing scheduled in April 2005, the ODM permit proceeding was stayed at MSC's 
request. Although MSC's witness, Mr. Scolar, confirmed he had never witnessed 
during his nine and one-half years at ODM a denial of a permit after ODM's 
initial recommendation to grant one and a formal hearing, he later admitted that 
new issues may be raised at the formal hearing on ODM's decision, and therefore 
obtaining the permit was not guaranteed. As a result, we agree the trial court 
correctly concluded MSC, without having obtained a permit to mine, never had a 
vested right to mine. Cf. Gonzales v. City of Oklahoma 
City, 2010 OK CIV APP 62, 238 P.3d 954 and Miller v. 
Gonzales, 2010 OK CIV APP 
56, 239 P.3d 163 (both 
holding a constitutionally protected vested right does not arise from one's mere 
pursuit of a license and engaging in an effort to satisfy all applicable 
requirements for licensure).
¶33 Our analysis does not end with affirming the express part of the court's 
judgment in light of MSC's alternative argument, i.e, even if it does not 
have a vested property right, it prevails under Bankoff's balancing of equities 
test. Importantly here, the Court in Bankoff first recognized that "a 
property owner does not have a vested interest or right in the 
continuation of an existing zoning classification so that his mere hope of 
developing the land in a particular way in the future will not be protected 
against later zoning amendments." However, the Court then stated:

 
 Circumstances may occur, however, which will give rise to judicial 
 recognition of a property interest sufficient to protect the owner's 
 intended use from the reach of an otherwise applicable amendment to the 
 zoning classification. In drawing that line between a landowner's hope for 
 the contemplated future development of his land and an interest which 
 the courts will recognize as vested and therefore protected, several 
 judicial tests have evolved.
Bankoff at ¶ 8. (Emphasis added)
¶34 The Bankoff Court then considered two balancing of equities tests, 
the first described as being used by "most courts":

 
 While a landowner will not be immune from a zoning change if he has 
 done nothing more than obtain a permit from the licensing authority, he 
 will be protected if he has made substantial expenditures in reliance 
 thereon, or has committed himself to his substantial disadvantage in 
 reliance on the permit or zoning provisions before the amendment went into 
 effect, even though no construction has begun. (Emphasis added.) 1994 OK 58, ¶ 
9.
"Other courts," according to Bankoff, "without rejecting the general 
rule recognizing vested interests, have also established a 'balance of equities' 
test as an alternative means of weighing and determining the respective 
interests of the property owner and zoning authority." Id., ¶ 10.
¶35 "Under both tests," the Bankoff Court explained that the courts 
consider: 1) "the good faith of the landowner," 2) "the substantiality of the 
landowner's reliance on the existing zoning," 3) "the landowner has made 
substantial expenditures or committed himself to a substantial disadvantage in 
reliance thereon"; and 4) "the conduct of the licensing board," i.e., 
whether the enacted zoning change was the result of maliciousness or if it was 
intended and directed toward the particular landowner and his intended use. 
Id., ¶ 11.
¶36 Although recognizing some jurisdictions apply the existing zoning law at 
the time of the landowner's application when "there is evidence of bad faith, 
delaying tactics, prejudice or reliance," the Court in Bankoff declined 
to decide whether the Commission had acted in bad faith, and instead decided 
"the equities require finding that the [zoning] amendment did not apply to 
Bankoff [the landowner] and his intended use of the property." Id., ¶ 
14.
¶37 The Court in Bankoff similarly eliminated the need to decide whether the 
landowner's lessee, BFI, had a vested right to use the property as a 
landfill, holding "for even without such finding of a vested right, equitable 
considerations lead us to affirm the trial court's judgment in favor of BFI." 
Those equitable considerations were:

 
 [The landowner] had done everything legally required of him. The state 
 had approved the proposal. The trial court had determined that the Board 
 should have issued the [conditional-use] permit. The Health Department 
 had issued its permit. A substantial amount of money ($800,000.00) 
 had been spent on the project. But for the statutory automatic stay 
 imposed by reason of the appeal, the landfill would have been in 
 actual use. (Emphasis added.) 1994 OK 58, ¶ 
15.
MSC contends the trial court's ruling disregards both its vested property 
right in the 2003 Mining Lease and the Bankoff Court's last "but for" 
consideration. Like the landowner and lessee in Bankoff, MSC also 
contends it also spent substantial expenditures toward its Business Plan in 
reliance on Fitzhugh's zoning laws as they existed in 2003 and it acted in good 
faith at all times, unlike Town, which admitted acts of bad faith, e.g., 
its intent in creating the zoning ordinance was to prevent MSC from mining. 
Despite admitting "several key distinctions" between Bankoff and the 
instant case,"[17] MSC nevertheless contends it prevails under the 
balancing of equities test.
¶38 Assuming, without deciding, that Bankoff's balancing test is 
applicable here,[18] we disagree based on the joint stipulations and 
the trial testimony that the equities here require finding Town's zoning 
ordinances do not apply to MSC. Despite MSC's alleged substantial expenditures 
($349,178.54), argued in reliance on Town's existing zoning in 2003, the trial 
court heard abundant conflicting testimony. MSC admitted execution of the 2003 
Mining Lease in Pontotoc County accomplished part of its business plan created 
in 2000 to build a portable rock crusher that could be transported between two 
different quarries. At the time MSC obtained the 2003 Mining Lease in Pontotoc 
County, it had already had a mining lease in Seminole County and had made 
substantial monetary investments in building the portable rock crusher at its 
plant in Pawnee. The trial court made numerous findings of fact, which MSC does 
not challenge on appeal, regarding 1) the timing and amount of MSC's 
expenditures on building the portable rock crusher years prior to finding and/or 
executing the 2003 Mining Lease, during which negotiations MSC admits it first 
was told by the Lukes there were no zoning restrictions for their property, and 
2) of its continued expenditures after MSC first learned the lease was inside 
Town's corporate limits in April 2003 and became aware in November 2003 of the 
intent of Town's leaders to enact zoning to prohibit mining within its corporate 
limits. Therefore the court's implied finding MSC's substantial expenditures 
were not made in reliance on Town's lack of zoning ordinances is not 
clearly contrary to the weight of the evidence.
CONCLUSION
¶39 We therefore determine as a matter of law, MSC did not have a matured 
vested property right to mine rock. It had lease contract rights only as and 
between MSC and its lessor. Secondly, the trial court correctly applied the 
Bankoff equitable balancing test, took testimony and weighed the evidence 
in favor of Town. This determination is not against the weight of the evidence 
heard by this trial court, and we AFFIRM.
JOPLIN, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] We 
expressly reject MSC's seventh proposition alleging the judgment on appeal does 
not comply with 12 O.S. 2011 § 
611.

[2] We note 
the joint stipulation's description of the Lukes as owners of "Section 22" 
conflicts with the actual description in the Lease as "Section 11" and as being 
approximately "200 acres more or less." MSC's Application for Permit To Engage 
in Non-Coal Mining also refers to "Section 11."

[3] MSC's 
exhibit marked as "Exhibit No. 4," which Mr. Stewart testified was the lease 
agreement between MSC and Jeffrey and Julia Luke, signed January 3, 2003, was 
offered without any objection and admitted by the court at p. 12 of the trial 
transcript. However, instead of the 1/03/03 Lease, the only "Exhibit No. 4" 
included in the two exhibit binders transmitted to this Court is titled "Minutes 
for 10-6-2003." Although MSC lists the 2003 Mining Lease as an exhibit in three 
different motions in the record, only the first and last pages of the lease 
(marked as two consecutively-numbered pages) are attached to each motion. There 
is no explanation in the record for what appears to be an intentional removal of 
three of the five-page lease. The record shows no dispute between the parties 
over the precise rights granted to MSC by the 2003 Mining Lease. Because the 
parties' stipulation of the specific rights granted thereby are quoted in MSC's 
brief with record cite to Mr. Stewart's trial testimony re-affirming the "joint 
stipulation", which fact is again not challenged in Town's Answer Brief, we 
accept these uncontroverted admissions in the parties' briefs as material 
supplementing the record. Deffenbaugh v. Hudson, 1990 OK 37, ¶4, 791 P.2d 84, 85.

[4] This 
opinion was not included in the record although the judgment on appeal includes 
findings regarding C-04-121. Appellate courts can take judicial notice of its 
own records in litigation interconnected with an appeal before it. House of 
Realty, Inc. v. City of Midwest City, 2004 OK 97, n. 1, 109 P.3d 314.

[5] In 
pertinent part, 11 O.S. 2001 § 
44-107.1(A) states "[t]he 
lawful conforming use of a building, structure or premises as such existed at 
the time of the adoption and recording of any ordinance affecting it, may be 
continued, although such use does not conform with the provisions of such 
ordinance" and "the municipality may provide for the termination of lawful 
nonconforming uses either by specifying the period or periods within which such 
use shall be required to cease. . ." Part II of First Zoning Ordinance and its 
two successors, in relevant part, similarly provides "[a]ny existing 
non-conforming use, as of the time this ordinance is enacted, may continue for a 
period not to exceed five years, unless some longer period may be shown by the 
owner to be required to reasonably amortize the actual investment in such 
activity as of the time this ordinance is enacted" and "[i]n no event, shall 
such longer period of amortization exceed ten (10) years from the date of this 
ordinance."

[6] 
Pursuant to the Order Granting Applicant's Motion to Stay, the Objectors and 
Town, who were ordered to respond to MSC's Motion to Stay, each "stipulated that 
the Motion to Stay should be granted." R. p. 745. After striking the trial, the 
order states "[t]his case is stayed pending a final determination in three cases 
pending in the District Court of Ponotoc County in which issues pertinent to 
the instant case may be decided: Case No. C-05-27; C-05-50; and C-04-121. 
When these matters are concluded, counsel are directed to file a Motion to Lift 
Stay and advise whether the application is withdrawn or whether the case should 
be reset for trial."

[7] The 
court expressly found after review of the records in the two cases that "both 
cases involve the validity and/or enforceability of a zoning of [Town], and 
related claims. Many, if not all, of the same facts and legal issues are 
involved in each of the two cases." He then found "the interests of justice and 
judicial economy will be served if the two cases are consolidated for purposes 
of pretrial proceedings (including discovery) and for trial."

[8] An 
appeal from Town's denial of its variance was added as MSC's Fifth Cause of 
Action in its Second Amended Petition & Counterclaim filed July 18, 2007. 
Over the next year, MSC's request for district court review of Town's denial was 
neither raised nor argued in the parties' subsequently-filed motions to dismiss 
and motions for summary judgment. However, in MSC's Response & Objections to 
Town's summary judgment motion, MSC reaffirmed that "[s]ince the time of [the 
latter motion], MSC has amended its causes of action" and listed as the first of 
three, "the zoning ordinances were unreasonable, arbitrary or constitutes an 
unequal exercise of police powers and reversal of the order as it applies to 
MSC." The affirmed judgment on appeal necessarily disposes of that cause of 
action.

[9] MSC 
realleged in both amended petitions its separate causes of action for 
intentional interference of contract and with prospective business. We note for 
the record there is no dismissal of MSC's tort claims in the appellate record or 
listed on the appearance docket. However, MSC expressly stated in its Response 
and Objection to Defendant's Motion for Summary Judgment filed October 11, 2010, 
that "[s]ince the filing of Defendant's [latter motion] MSC has amended its 
causes of action," to the following: the ordinances are unreasonable and 
arbitrary (see fn. 8), MSC has a vested property right, and inverse 
condemnation. MSC then conceded "[a]ccordingly, this renders Town's motion for 
summary judgment moot" as to its first three propositions "as these are all 
related to argument for claims of torts." Because MSC's response contains 
citations to legal authority as well as argument, it is in substance a brief and 
will be treated as such for purposes of supplementing the record. Casey v. 
Casey, 2005 OK 13, ¶ 13, n. 
2, 109 P.3d 345.

[10] MSC 
claims in the "Statement of Facts" in its Brief in Chief that "by July 19, 2010, 
the Court had determined the issues within the consolidated cases were to be 
bifurcated for trial. Initially the Court would determine the validity of the 
zoning changes and depending on the outcome subsequently determine the remaining 
issues in the consolidated case for trial purposes." The footnote to this 
statement explains, "Although there was not a specific order to this effect, the 
First Pre-trial Conference Order filed on July 19, 2010, only listed MSC and the 
Town of Fitzhugh as parties to the case."

[11] MSC 
raised in its Petition in Error the court's failure to find the first two zoning 
ordinances were "fatally flawed" and "were void" and also that he "improperly 
allowed for all of the ordinances to be retroactively applied to [MSC]." Because 
MSC failed to brief those alleged errors, such issues are deemed waived. 
Okla.Sup.Ct.R.1.11(k)(1).

[12] In 
its Answer Brief, Town contends, without record citation, that MSC "dismissed 
all counts that would have required a jury trial and instead decided to proceed 
under a theory of declaratory judgment and equity." MSC does not dispute that 
contention in its Reply Brief, which is confirmed by the record, i.e., 
MSC eliminated its "inverse condemnation/ unconstitutional taking" theory of 
recovery in the final PTC Order filed July 18, 2011, in which its lists two 
"theories of recovery," i.e., "determination the first two zoning 
ordinances are 'fatally flawed' pursuant to 11 O.S. § 43-104" and "MSC is a 
non-conforming use if zoning ordinance is found to be proper" and for its 
"Damages/relief sought," declaratory judgment and attorney fees. Nevertheless, 
the affirmed judgment on appeal, by implication, disposes of that theory of 
recovery.

[13] Six 
of MSC's propositions allege: 1) Town's enactment of its zoning ordinance in 
2006 cannot be retroactively applied to MSC; 2) its mining lease is a vested 
property right protected under Art. II, §24, of the Oklahoma Constitution; 3) 
Bankoff applies to MSC; 4) MSC prevails under balancing of equities test 
applied by Bankoff; 5) MSC incurred substantial expenditures upon 
reliance of the zoning laws as they existed in 2003; and 6) Town's admitted acts 
of bad faith must be considered. See fn. 1 for this Court's rejection of MSC's 
seventh proposition.

[14] 
See Material Service Corporation v. Rogers County Commissioners, 2006 OK CIV APP 52, 136 P.2d 1063 
(summary adjudication order reversed because the issue whether the county's 
annexation and zoning ordinances substantially impaired the plaintiff's mining 
lease was one of fact for the finder in a trial on the merits). We assume from 
the limited facts in that case and claim for economic damages for "being 
prohibited from mining the subject property for 3 years", that the plaintiff's 
proposed use of mining its leasehold interest never came to fruition, 
resulting in its allegation that the county's zoning and land use regulations 
constituted an "unconstitutional taking" of such interest. Although MSC 
originally plead the latter theory in this case, it was deleted from the 
Pretrial Conference Order filed July 18, 2011, which expressly limited MSC to 
declaratory relief.

[15] 
Wilkerson v. City of Pauls Valley, Oklahoma, 2001 OK CIV APP 66, 24 P.3d 872 (plaintiff, who had 
operated a mobile home park under a lease of land located in a flood plain long 
before the city adopted flood prevention ordinances for years before the 
enactment of zoning, had a vested right consisting of a continual nonconforming 
use of an existing mobile home park but no vested right to replace trailers or 
install new ones absent compliance with those ordinances); Perkins 
Whistlestop, Inc. v. State ex rel. Dept. of Transportation, 1998 OK CIV APP 7, ¶ 10, 954 P.2d 1251, 1254 (leasehold owner 
of one acre tract had standing to sue the state since "[a] leasehold interest 
may be subject to a taking and the leaseholder may have a cause of action in 
inverse condemnation.")

[16] 
While mining is the all-encompassing term, extracting hard rock is commonly 
referred to in the industry as "quarrying." See Sierra Club v. County of 
Sonoma, 6 Cal.App.4th 1307, 1313-1314, 8 Cal.Rptr.2d 473 (1992).

[17] In 
Bankoff: 1) the application of the landowner and lessee was for a 
conditional use permit (CUP) to operate a landfill, 2) the money spent toward 
the operation was in reliance on the county's allowance of a landfill operated 
by BFI across the street from the proposed landfill, 3) the county board denied 
the landowner's CUP application, 4) the landowner appealed the denial to the 
district court, who determined the board's decision was arbitrary and 
capricious, 5) during the board's appeal of that ruling to the Supreme Court, 
the state health department issued the permit to operate the landfill to the 
lessee and less than 20 days later, the county amended the zoning ordinances 
which, if applicable, effectively rendered moot the CUP application and 
subsequent proceedings, and 6) the lessee then filed declaratory judgment suit 
challenging the validity of the amended zoning ordinance in district court. The 
two cases were then consolidated for trial purposes.

[18] The 
Bankoff Court expressly limited its decision "as a narrowly-construed 
exception based strictly on equitable considerations given the facts peculiar to 
this case." Id., 1994 OK 
58, ¶ 16.
 
 
 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1998 OK CIV APP 7, 954 P.2d 1251, 9 OBJ 517, PERKINS WHISTLESTOP, INC. v. STATE ex rel. DEPT. OF TRANSPORTATION
Discussed
 2001 OK CIV APP 66, 24 P.3d 872, 72 OBJ 1878, WILKERSON v. CITY OF PAULS VALLEY, OKLAHOMA
Discussed
 2002 OK CIV APP 81, 52 P.3d 1053, STATE v. UNITED STATES BEEF CORP.
Cited
 2006 OK CIV APP 52, 136 P.3d 1063, MATERIAL SERVICE CORP. v. ROGERS COUNTY COMMISSIONERS
Cited
 2010 OK CIV APP 56, 239 P.3d 163, MILLER v. GONZALES
Discussed
 2010 OK CIV APP 62, 238 P.3d 954, GONZALES v. STATE
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1990 OK 37, 791 P.2d 84, 61 OBJ 1018, Deffenbaugh v. Hudson
Discussed
 1994 OK 10, 867 P.2d 1273, 65 OBJ 457, Welty v. Martinaire of Oklahoma, Inc.
Discussed
 1994 OK 58, 875 P.2d 1138, 65 OBJ 1829, Bankoff v. Board of Adjustment of Wagoner County
Discussed at Length
 2002 OK 80, 63 P.3d 1, TRIANGLE FRATERNITY v. CITY OF NORMAN ex rel. NORMAN BOARD OF ADJUSTMENT
Discussed
 2004 OK 97, 109 P.3d 314, HOUSE OF REALTY, INC. v. CITY OF MIDWEST CITY
Discussed
 2005 OK 13, 109 P.3d 345, CASEY v. CASEY
Discussed
 2007 OK 40, 160 P.3d 967, CHEROKEE NATION v. NOMURA
Discussed
 1996 OK 83, 922 P.2d 609, 67 OBJ 2332, Pine Island RV Resort, Inc. v. Resort Management, Inc.
Discussed
 1975 OK 167, 544 P.2d 498, FERGUSON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 1982 OK 75, 648 P.2d 825, Randolph v. Board of Regents of Oklahoma Colleges
Discussed
 1998 OK 58, 961 P.2d 804, 69 OBJ 2254, MACY v. OKLAHOMA CITY SCHOOL DIST. NO. 89
Discussed
 1986 OK 8, 718 P.2d 348, 57 OBJ 783, Baker v. Oklahoma Firefighters Pension and Retirement System
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 2-107, Effect of Incorporation - Filing - Judicial Notice - Challenges
Cited
 11 O.S. 43-104, Notice and Public Hearing of Proposed Regulation, Restriction, or Boundary - Detoxification Facility Notice Requirements
Discussed
 11 O.S. 44-107.1, Lawful Nonconforming Use of Building, Structure or Premises - Regulations and Restrictions Affecting Termination of Nonconforming Uses - Construction of Section
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 611, Statement of Findings and Conclusions of Law
Cited
 12 O.S. 1654, Determination to Have Effect of Final Judgment - Reviewable as Other Judgments
Cited
 12 O.S. 1656, Issues of Fact
Cited
Title 45. Mines and Mining
 Cite
Name
Level

 45 O.S. 724, Permits - Applications - Bond
Cited
 45 O.S. 722, Declaration of Policy
Cited